EXHIBIT "1"



**Notice of Service of Process**

**null / ALL**
**Transmittal Number: 16506944**
**Date Processed: 04/14/2017**

| | |
|---|---|
| **Primary Contact:** | Jeffrey McCabe<br>Ocwen Financial Corporation<br>1661 Worthington Road<br>Suite 100<br>West Palm Beach, FL 33409 |

| | |
|---|---|
| **Entity:** | Ocwen Loan Servicing, LLC<br>Entity ID Number  2122003 |
| **Entity Served:** | Ocwen Loan Servicing, LLC |
| **Title of Action:** | Phyllis Sandigo vs. Ocwen Loan Servicing, LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Santa Clara County Superior Court, California |
| **Case/Reference No:** | 17CV308431 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 04/12/2017 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | William E. Kennedy<br>408-241-1000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscglobal.com

SUM-100

**SUMMONS**
*(CITACION JUDICIAL)*



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**(ENDORSED)**

F I L E D

APR 1 1 2017

**Clerk of the Court**
Superior Court of CA County of Santa Clara
BY_____DEPUTY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Ocwen Loan Servicing, LLC, U.S. Bank National Association, As Trustee for GSAA Home Equity Trust 2007-3, Asset-Backed Certificates

**YOU ARE BEING SUED BY PLAINTIFF:** Series 2007-3 and Does 1-100
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Phyllis Sandigo

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es:)* Santa Clara County Superior Court | CASE NUMBER: *(Número del Caso):* **17CV308431** |

191 North First Street
San Jose, CA  95131

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William E. Kennedy, 2797 Park Ave. Suite 201, Santa Clara, CA 95050 (408) 241-1000

| | | | |
|---|---|---|---|
| DATE: April 11, 2017 *(Fecha)* | APR 1 1 2017 | Clerk, by _____ *(Secretario)* | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*  Ocwen Loan Servicing, LLC

under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☒ other *(specify):* Limited Liability Corporation
4. ☐ by personal delivery on *(date):*

---

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

1  William E. Kennedy California Bar No. 158214
   CONSUMER LAW OFFICE OF WILLIAM E. KENNEDY
2  2797 Park Avenue, Suite 201
   Santa Clara, California 95050
3  Telephone: (408) 241-1000
   Facsimile: (408) 241-1500
4  Email: wkennedy@kennedyconsumerlaw.com

5  Ben Dupre California Bar No. 231191
   DUPRE LAW FIRM PROF. CORP.
6  3567 Benton St. # 171
   Santa Clara, CA 95051
7  Telephone: (408) 874-5300
   Facsimile: 408) 727-5310
8  bendupre@gmail.com

9  Attorneys for Plaintiff PHYLLIS SANDIGO

**(ENDORSED)**
**F I L E D**

APR 11 2017

**Clerk of the Court**
Superior Court of CA County of Santa Clara
BY_____DEPUTY

10

11              **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**

12                              **UNLIMITED JURISDICTION**

13                                            **1 7 C V 3 0 8 4 3 1**

14  Phyllis Sandigo,                          **COMPLAINT**

15              Plaintiff,                     1.  Homeowner's Bill of Rights, Civil
                                                  Code § 2920 et seq.
16      v.                                     2.  Violation of the Rosenthal Act, Civil
                                                  Code § 1788 et seq.;
17  Ocwen Loan Servicing, LLC and U.S. Bank    3.  Violation of the Real Estate Settlement
    National Association, as Trustee for GSAA      Procedures Act, 12 U.S.C. § 2605 et
18  Home Equity Trust 2007-3, Asset Backed        seq.;
    Certificates, Series 2007-3 and Does 1-100, 4. Conversion;
19                                             5.  Violation of the Consumer Credit
            Defendants.                            Reporting Agencies Act, Civil Code §
20                                                 1785.1 et seq.;
                                               6.  Violation of the Unfair Competition
21                                                 Law, Business and Professions Code §
                                                   17200 et seq.
22
                                               **DEMAND FOR JURY TRIAL**
23

24

25                                      I. **INTRODUCTION**

26      1.      Ms. Sandigo is a senior and a widow, living on a fixed income. She has owned

27  and lived in her home for over 40 years.  In June 2016, Ocwen sprung on Ms. Sandigo a letter

28  falsely stating that she was past due over $6,000 on her mortgage loan, when in fact Ms. Sandigo

COMPLAINT AND DEMAND FOR JURY TRIAL                                                    1

1  was current on her loan and had been for years.  Ocwen would spend the next ten months on a

2  relentless and unlawful collection campaign -- harassing her with constant collection calls

3  (ignoring her repeated requests to cease), sending collection letters, falsely reporting damaging

4  information on her credit report, and threatening to foreclose on her home.  Despite Ms.

5  Sandigo's repeated telephone calls to resolve the problem, Ocwen robotically rejected her

6  disputes, continued to demand payment, and falsely stated she was past due.  In response to Ms.

7  Sandigo's numerous dispute letters, Ocwen responded with confusing non-responses, and

8  inaccurate information concerning the reasons Ocwen contended Ms. Sandigo was in default.  In

9  March 2017, Ocwen followed through on its threats of foreclosure by recording a Notice of

10  Default with Santa Clara County (starting the foreclosure clock running on when Ocwen can sell

11  Ms. Sandigo's home at auction).  That same month, Ocwen sent Ms. Sandigo, in just one day

12  alone, over fifty (50) foreclosure notices; when stacked on a table, the foreclosure notices are

13  almost six inches thick.

14       2.     As a result of Defendants' unlawful acts and omissions, Ms. Sandigo has suffered

15  and continues to suffer significant emotional distress including bouts of crying, physical

16  shaking, nausea, nervousness, sleep problems (requiring valium and trazadone), stress, loss of

17  appetite, weight loss, paranoid, humiliation, loss of enjoyment in life, anger, loss of

18  concentration at home, fear of losing her home, hopelessness, frustration, anxiety, among other

19  negative emotions. The telephone conversations with Ocwen personnel were disturbing to the

20  point that Ms. Sandigo was often left physically shaking, and at times crying after they were

21  over.

22       3.     Ms. Sandigo is a senior citizen, as that term is defined by Civil Code § 1761.

23  Ocwen knew that their conduct was directed at a senior citizen.  A widow and a senior citizen,

24  Ms. Sandigo is substantially more vulnerable than other members of the public to Ocwen's

25  conduct because of her status, and actually suffered substantial emotional and economic

26  damages from Defendants.

27       4.     Defendants have a history, business plan, or practice of unlawfully servicing

28  mortgage loans and unlawful collection practices similar to herein.

COMPLAINT AND DEMAND FOR JURY TRIAL               2

5.    Defendants' conduct is reckless and with a conscious disregard for the rights of Ms. Sandigo, particularly after receiving repeated pleas from Ms. Sandigo to cease the collection campaign because she was current on her payments.

## II. PARTIES

6.    Plaintiff Phyllis Sandigo is an individual and at all relevant times herein was a resident of Santa Clara County, California.   Ms. Sandigo is a senior citizen as that term is defined by Civil Code §1761.

7.    Defendant Ocwen Loan Servicing, LLC ("Ocwen"), the current servicer of Ms. Sandigo's mortgage loan, is primarily engaged in the business of mortgage servicing.

8.    Defendant U.S. Bank U.S. Bank National Association, as Trustee for GSAA Home Equity Trust 2007-3, Asset-Backed Certificates, Series 2007-3 ("U.S. Bank") is the trustee for the investor on the loan and owner of the note secured by Ms. Sandigo's home, and is a national banking association organized under the laws of the United States.

9.    Ms. Sandigo alleges that at all times herein mentioned, each of the Defendants was, and is now, the agent, servant, employee and/or other representative of the other Defendants.  In doing the things herein alleged, Defendants were acting in the scope, purpose and authority of such agency, service of employment, and/or other representative capacity with the permission, knowledge, consent, and ratification of the other Defendants.

10.    Plaintiff is ignorant of the names and capacity of Defendants herein sued as Does 1-100, and therefore sues these Defendants by such fictitious names.  When the true names and capacities of these Defendants becomes known, Plaintiff will amend this Complaint to include their true names and capacities and, if necessary, will seek leave to amend to add additional allegations against them.  Plaintiff is informed and believes, and so alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in the Complaint, and that Plaintiff's damages were proximately caused by their conduct.

## III. VENUE AND JURISDICTION

11.    Defendants, and each of them, are subject to the jurisdiction of Santa Clara County Superior Court of the State of California by virtue of their business dealings and

COMPLAINT AND DEMAND FOR JURY TRIAL                                              3

1    transactions in California, and by causing injurious effects in California by their acts or

2    omissions.

3         12.    Venue is proper in this Court because the property and transactions at issue

4    occurred in Santa Clara County.

5                            IV.  **FACTUAL SUMMARY**

6         13.    Plaintiff incorporates and realleges all of the preceding allegations as though fully

7    set forth here.

8         14.    The fundamental reason why Ms. Sandigo has found herself victim of Ocwen's

9    unlawful and abusive debt collection practices (including its ongoing attempt to foreclose on her

10   home) is that Ocwen is wrongfully attempting to collect money for escrow regarding property

11   tax payments for a three-year period despite the fact that Ocwen paid no property tax, and Ms.

12   Sandigo and her late husband made such property tax payments directly to Santa Clara County.

13        15.    From 2013 to 2016, Ocwen never requested Ms. Sandigo to make monthly

14   payments in an amount which included escrow for property tax payments.  But in 2016, Ocwen

15   suddenly, and without any explanation, falsely claimed that such higher payments should have

16   been made.  Ms. Sandigo spent hours disputing the matter with Ocwen during numerous

17   telephone conversations, as well as in written correspondence.  Ocwen repeatedly rejected Ms.

18   Sandigo's pleas and didn't appear to listen to anything Ms. Sandigo said.

19        16.    Instead of fixing the problem, Ocwen continues to engage in a relentless

20   campaign of unlawful collection harassment in an attempt to collect more than $6,000 (going on

21   now for more than ten (10) months).  This collection campaign consists of constant collection

22   calls, collection letters, false reporting of past due balances and delinquencies to national credit

23   reporting agencies, and initiating a foreclosure to sell Ms. Sandigo's home.

24                          V.  **FACTUAL ALLEGATIONS**

25        17.    Plaintiff incorporates and realleges all of the preceding allegations as though fully

26   set forth here.

27        18.    Plaintiff, Phyllis Sandigo lives at 3577 Lynx Drive in San Jose, California.

28        19.    Ms. Sandigo and her late husband Joseph Sandigo purchased their home, at the

COMPLAINT AND DEMAND FOR JURY TRIAL                                              4

1   time in a newly developed neighborhood, in 1976 and raised their family there.

2        20.    In September 2011, the Sandigos filed a Chapter 13 bankruptcy, which Ms.

3   Sandigo successfully completed in November 2016. In 2014, Mr. Sandigo passed away. The

4   mortgage was current, and it was not included in the bankruptcy. The Sandigos continued to

5   make timely monthly payments directly to Ocwen during the bankruptcy.

6        21.    In January 2012, the Sandigo's loan was modified. The modification calls for a

7   fixed principal and interest payment of $1,325.79 for the duration of the loan. At the end of the

8   loan, a balloon payment is due.

9        22.    The crux of this matter concerns the escrow portion of the monthly payment on

10   Ms. Sandigo's loan. There are two escrow items, which at times, have been added to the

11   principal and interest portion of the payment ($1,325.79) to raise the total monthly payment due.

12   The first is for the payment of hazard insurance (i.e. homeowner's insurance). The cost of the

13   escrow payment for hazard insurance has varied somewhat, but has remained approximately

14   $89.42 per month. The Sandigos have at all times made payments which included the hazard

15   insurance escrow amount, and there is no known dispute concerning these amounts. Thus, the

16   regular monthly payment due to Ocwen has always been at least $1,415.21 ($1,325.79 +

17   $89.42).

18        23.    The second escrow item is for property tax. This is the escrow item which is at

19   the center of Ocwen's cascade of errors and wrongful collections. The cost of the escrow

20   payment for property tax has been approximately $182.35. When Ocwen included this escrow

21   item in the payment, it brought the payment to approximately $1,597.56. ($1,325.79 + $89.42 +

22   $182.35).

23        24.    In early 2012, when the loan was modified, it was agreed that their account would

24   be escrowed for property tax, as well as hazard insurance for one year. Accordingly, in 2012

25   and early 2013, Ocwen required payment of approximately $1,597.56, which the Sandigos paid

26   without dispute.

27        25.    In early 2013, the Sandigos requested that their account be de-escrowed for

28   property tax. Ocwen did so. Accordingly, beginning in June 2013, Ocwen began sending the

1  Sandigos billing statements for a lower monthly payment of approximately $1,415.21, thus

2  reflecting the fact that the account had been de-escrowed for property tax.

3    26. Ocwen made no payment of property tax after March 22, 2013.  The Sandigos

4  have made all property tax payments due directly to Santa Clara County after March 2013.  The

5  Sandigos continued to make the de-escrowed payment of approximately $1,415.21 from June

6  2013 through June 2016.

7

**Ocwen Unlawfully Attempts to Collect $6,266.55, Falsely Stating Ms. Sandigo is**
8  **Delinquent and Past Due**

9    27. On May 24, 2016, after Ms. Sandigo had been making payments of

10  approximately $1,415.21 for three years, which Ocwen accepted without issue, defendant U.S.

11  Bank (trustee for the loan's investor) filed a document in bankruptcy court stating that Ms.

12  Sandigo was $6,266.55 past due on her mortgage.  U.S. Bank attached a payment history which

13  indicated that U.S. Bank contended that the Sandigos had been required to make a payment of

14  $1,597.56 (not $1,415.21) from June 1, 2013 to April 2016.

15    28. Ms. Sandigo regularly made her monthly payments through Ocwen's online

16  system.  In July 2016, Ocwen, following U.S. Bank's actions, Ocwen suddenly and without

17  explanation, began requiring Ms. Sandigo to make payments of $1,597.56 instead of the

18  $1,415.21, which she had been paying up until that point.  Ocwen's system no longer would

19  accept payments of $1,415.21.  Ms. Sandigo called Ocwen to dispute the higher payment

20  required.  Ocwen insisted that she make the $1,597.56 payment.  Ms. Sandigo had no choice but

21  to pay.  Ms. Sandigo was charged $19.50 to make the payment, as a result of Ocwen's surcharge

22  on such telephonic payments, which it refers to as "Speedpay."

23

**Ocwen Rejects Ms. Sandigo's Oral Pleas, and Unlawfully Attempts to Collect Over $6,000**
24  **Not Owed**

25    29. After these events, Ms. Sandigo began a long series of communications with

26  Ocwen to dispute Ocwen's handling of her account.

27    30. Ms. Sandigo spoke to numerous individuals.  None of these individuals fixed the

28  problem.  Ms. Sandigo was forced to explain the problem over and over to each of the different

COMPLAINT AND DEMAND FOR JURY TRIAL        6

1   individuals.  Ms. Sandigo felt Ocwen was never really listening to her when she would try to

2   explain and get Ocwen to fix the problem.  Despite her explanations, Ocwen continued to falsely

3   state she was behind on payments and demanded that she pay.  At various times, Ocwen falsely

4   stated that Ms. Sandigo missed payments, or that her payments in the past had not been in a

5   sufficient amount.  These conversations were emotionally upsetting to Ms. Sandigo and often

6   left her physically shaking.

7       31.     During other phone calls with Ocwen, Ms. Sandigo was often put on hold for

8   long periods of time.  Other times, she was told that someone would call her back, but no one

9   called.

10

## Ocwen's Representative Presanth Gives Conflicting Explanations and Does Not Fix the Problem

11

12      32.     Ms. Sandigo was eventually put in touch with a representative named Presanth

13  who offered a variety of explanations for Ocwen's conduct.

14      33.     In one conversation with Ms. Sandigo, Presanth falsely stated that Ocwen had

15  paid Ms. Sandigo's property taxes, which was the reason her payment had increased.  In fact, as

16  alleged above, Ms. Sandigo paid all property taxes due on the property after March 22, 2013.

17      34.     In another conversation, Presanth stated that Ocwen had not received a number

18  of her monthly payments.  Specifically, Presanth falsely stated that Ocwen had not received

19  payments in April 2013, May 2014, September 2014, and November 2015.

20      35.     Ms. Sandigo located her Wells Fargo bank statements, which showed that she in

21  fact had made payments during those months.  Ms. Sandigo sent the bank statements to

22  Presanth.  Even this was an ordeal, Ms. Sandigo emailed the statements to the email address

23  Presanth had provided.  Ocwen's email system acknowledged receipt of the email, but directed

24  Ms. Sandigo to email it to other email addresses. These addresses did not work, as Presanth said

25  that he did not receive such emails.  Ultimately, he told Ms. Sandigo to "efax" the documents,

26  which required the opening of an efax account.  By this means, Ms. Sandigo was finally able to

27  get the documents to Presanth.

28      36.     During subsequent conversations with Presanth, he admitted that Ocwen had in

1  fact received all payments.  However, Presanth would still not acknowledge that Ms. Sandigo

2  had wrongly been placed in default, stating that he still needed to check with Ocwen's

3  bankruptcy department.

4        37.     In Ms. Sandigo's last telephone call with Presanth, he told Ms. Sandigo that her

5  monthly payment had been increased during her bankruptcy, but that Ocwen had not been

6  allowed to notify her that this had occurred.  Presanth reiterated that Ms. Sandigo was in default

7  and that there was nothing more that he would do.

8

9  **Ocwen Dismisses Ms. Sandigo's Written Dispute Letters, and Continues to Unlawfully Collect Over $6,000 and Rejects Ms. Sandigo's Payments**

10        38.     Ms. Sandigo also submitted written disputes to Ocwen.

11        39.     For example, on July 26, 2016, Ms. Sandigo faxed a letter to Ocwen's Research

12  Department at fax number 407-737-6375.  Ms. Sandigo's July 26, 2016 letter disputed Ocwen's

13  increase of her monthly payment to $1,597.56, and also submitted proof that she made two

14  payments, which an Ocwen representative had falsely claimed that she had not made.

15        40.     The Research Department is the department at Ocwen, which handles Qualified

16  Written Requests/Notices of Error pursuant to RESPA.

17        41.     On August 4, 2016, Ocwen sent a response to the July 26, 2016 letter.  The

18  response letter acknowledged that the two payments for which Ms. Sandigo had submitted proof

19  had been received and applied, but otherwise took no action to resolve the problem, or explain

20  why Ms. Sandigo's dispute concerning the increase in her payment amount was not valid.

21  Ocwen incorrectly interpreted the dispute letter to include a complaint about the due date on the

22  loan, which was not even addressed in Ms. Sandigo's July 26 letter.  Ocwen would continue its

23  unlawful collection campaign.

24        42.     On November 2, 2016, Ms. Sandigo faxed another dispute letter to Ocwen's

25  Research Department at 407-737-6375.  The letter responded to false statements made by Ocwen

26  personnel over the telephone that Ocwen had raised her monthly payment because Ocwen had

27  paid Ms. Sandigo's property taxes on her behalf.  Ms. Sandigo provided proof that she had made

28  the property tax payments herself for the last few years.  Ms. Sandigo again asked Ocwen to

COMPLAINT AND DEMAND FOR JURY TRIAL

8

1    reduce her payment to $1,415.21.

2         43.    On November 28, 2016, Ocwen sent Ms. Sandigo a letter in which it stated that it

3    had de-escrowed Ms. Sandigo's account for property taxes prospectively, and stated that Ms.

4    Sandigo's payment would be reduced to $1,416.37 starting in February 2017.  However, Ocwen

5    continued its unlawful collection campaign unabated.

6         44.    On December 8, 2016, Ocwen sent correspondence to Ms. Sandigo which

7    admitted that "we have not disbursed any funds toward the county tax since 03/22/2013."

8         45.    Neither Ocwen's November 28, 2016 letter nor its December 8, 2016 letter

9    addressed the larger issue, i.e. Ocwen retroactively charging $1,597.56 per month during time

10   periods when Ocwen paid no property tax, resulting in Ms. Sandigo's account being placed in

11   default, and triggering the abusive and harassing collection campaign.

12        46.    Then, things got even worse. Beginning in December 2016, Ocwen refused to

13   allow Ms. Sandigo to make her monthly payments.  Ms. Sandigo mailed payments to Ocwen but

14   Ocwen rejected them, and returned them to Ms. Sandigo.

15        47.    On December 26, 2016, Ms. Sandigo also sent a letter to Ocwen at the address

16   designated by Ocwen to receive Notices of Errors (sometimes known as Qualified Written

17   Requests) under the Real Estate Settlement Procedures Act ("RESPA").  In response to Ocwen's

18   representative, Presanth's earlier statement (that the reason Ocwen considered her to be in

19   default was that it contended that she had not made several payments), she provided her Wells

20   Fargo bank statements for four years, (from January 2013 through November 2016), and made

21   notations on the Wells Fargo statements showing each payment during that time period.  Ms.

22   Sandigo received no written acknowledgement or response to the December 26, 2016 letter,

23   despite that fact that RESPA required Ocwen to respond.

24

25   **Ocwen Continues Making Collection Calls (Despite Ms. Sandigo's Repeated Requests to Cease)**

26        48.    Ms. Sandigo also received a large number of collection calls from Ocwen

27   demanding payment.  These calls would range from morning until the afternoon, multiple times

28   per week.

COMPLAINT AND DEMAND FOR JURY TRIAL                                          9

49.     She would attempt to explain that she was making payments each month as required and that she paid her own property taxes, yet the callers would nonetheless demand payment. Ms. Sandigo repeatedly told Ocwen to fix the problem, and to stop calling and harassing her, yet the phone calls persisted. Many collectors seemed to have no knowledge of the previous calls or even that Ms. Sandigo disputed the default status of the loan.

**Ocwen Continues Sending Collection Letters, Assessing Fees and Conducting Home Inspections**

50.     Ocwen also sent a number of collection letters to Ms. Sandigo falsely stating that she was in serious default. The letters did not address or acknowledge Ms. Sandigo's many disputes.

51.     Some collection letters confusingly stated that Ms. Sandigo had not made payments in months when she clearly had made payments. For example, a December 1, 2016 letter stated "We have not received your 08/01/2016 through 12/01/2016 mortgage payment(s). . ." In fact, Ms. Sandigo made payments in August, September, October, and November 2016. (Ocwen would not allow Ms. Sandigo to make a payment in December 2016.)

52.     In February 2017, Ocwen's monthly statement listed a total amount due of $355,635.91.

53.     Ocwen sent a "Delinquency Notice" dated March 2, 2017 falsely stating that Ms. Sandigo was 213 days delinquent on her mortgage loan and stating "Failure to bring your loan current may result in fees and foreclosure – the loss of your home."

54.     During its collection campaign, Ocwen conducted inspections of Ms. Sandigo's home on a regular basis and assessed an illegal fee for each inspection. Ocwen also assessed a number of late charges based on the incorrect position that Ms. Sandigo was behind on her payments.

**Ocwen Continues to Report False, Incomplete and Damaging Information on Ms. Sandigo's Credit Report to National Credit Reporting Agencies**

55.     Ms. Sandigo's December 2016 Equifax credit report shows that she owed "amounts past due" in 2015 and 2016, when she was current on her mortgage. For example, in

1   June and July 2016, Ocwen reported an amount past due of $6,111.00.  Ms. Sandigo also sent a

2   copy of the December 26, 2017 letter to Equifax, to dispute the credit reporting, but received no

3   response.

4        56.     Ocwen never even bothered to report to the credit reporting agencies that Ms.

5   Sandigo was disputing that she was past due or delinquent.

6

7   **Ocwen Follows Through on its Unlawful Threats and Initiates a Foreclosure**

8        57.     On March 3, 2017, the Santa Clara County District Attorney's office sent a letter

9   to Ms. Sandigo advising her that a Notice of Default had been recorded against her home, and

10  that her home was in foreclosure.

11       58.     On or about March 13, 2017, fifty-four (54) copies of a Notice of Default were

12  delivered to Ms. Sandigo's home, indicating that Ocwen commenced the foreclosure process.

13       59.     The entire episode, including the prospect of losing her home, has caused and

14  continues to cause Ms. Sandigo significant emotional stress and physical symptoms, as

15  described above.

16

17  ### VI. LEGAL CLAIMS

18

19  **FIRST CAUSE OF ACTION**
    **Violation of the California Homeowner Bill of Rights**

20  **California Civil Code § 2924.11 – Against Ocwen and U.S. Bank**
    **California Civil Code § 2924.17 – Against Ocwen**

21

22       60.     Plaintiff incorporates and realleges all of the preceding allegations as though fully

23  set forth here.

24       61.     The loan at issue is secured by a first lien deed of trust against Ms. Sandigo's

25  principal residence, which is a single-family house and used only for personal, family, and

26  household purposes.

27       62.     Defendant Ocwen is a "mortgage servicer" as defined by Cal. Civil Code §

28  2920.5.

COMPLAINT AND DEMAND FOR JURY TRIAL               11

63.     On information and belief, Ocwen is not an entity described in Cal. Civil Code § 2924.18(b) because, among other reasons, it foreclosed on more than 175 residential real properties during the immediately preceding annual reporting period.

64.     Ms. Sandigo is a "borrower" as defined by Cal. Civil Code § 2920.5.

65.     As of March 2017, Ms. Sandigo was in compliance with the loan modification.

66.     Civil Code § 2924.11(c)(1) provides that if a foreclosure prevention alternative, such as a modification, is approved in writing and the borrower is in compliance with the loan modification, the servicer "shall not record a notice of default."

67.     Ocwen and U.S. Bank violated § 2924.11(c)(1) by recording a Notice of Default even though Ms. Sandigo was fully in compliance with the permanent loan modification.

68.     Civil Code § 2924.17 requires that foreclosure documents, including a Notice of Default, recorded by or on behalf of a mortgage servicer be accurate, complete, and supported by competent and reliable evidence.   The servicer must ensure that it has competent and reliable evidence to substantiate the borrower's default and right to foreclose, including the borrower's loan status and loan information, before recording foreclosure documents.

69.     Ocwen violated Civil Code § 2924.17 when it recorded, or had its agent record, the March 2017 Notice of Default, despite being on notice multiple times that Ms. Sandigo fully complied with the loan modification.

70.     Pursuant to Civil Code § 2924.12, Ms. Sandigo is entitled to an injunction to address material violations of sections 2924.11 and 2924.17.   She seeks an injunction which prevents the sale of her home, and requires Ocwen and U.S. Bank to rescind the Notice of Default and comply with the loan modification. Ms. Sandigo also seeks attorney's fees and costs.

## SECOND CAUSE OF ACTION
### Violation of the Rosenthal Act, Cal. Civil Code §§ 1788, *et seq*
### Against Ocwen

71.     Plaintiff incorporates and realleges all of the preceding allegations as though fully set forth here.

72.     Ocwen is a "debt collector" within the meaning of Civil Code§ 1788.2(c).

COMPLAINT AND DEMAND FOR JURY TRIAL                                            12

73.     The monies allegedly owed by Plaintiff is a "debt" within the meaning of Civil Code § 1788.2(d), and a "consumer debt" within the meaning of Civil Code § 1788.2(f).

74.     Ocwen's acts and omissions, and its entire course of conduct, as more fully described above, constitute numerous violations of the Rosenthal Fair Debt Collection Practice Act ("RFPDCPA"), Civil Code § 1788 et seq., including, but not limited to, the violations of §§ 1788 et seq., 1788.11, and 1788.17.

75.     Ocwen violated California Civil Code § 1788.11 by communicating by telephone, with the debtor with such frequency as to be unreasonable and to constitute a harassment under the circumstances.

76.     Ocwen violated California Civil Code § 1788.17 by demanding payments in excess of those required or allowed by the modification agreement, rejecting Ms. Sandigo's payments, assessing fees without justification, refusing to accept Ms. Sandigo's payments, refusing to provide a coherent reason for its contention that Ms. Sandigo was in default, failing to respond substantively to disputes submitted by Ms. Sandigo, and unlawfully threatening foreclosure, and initiating an illegal foreclosure.

77.     Ocwen violated Civil Code § 1788.13(e) by representing to Plaintiff that her loan could be increased by fees and charges, and including property inspection fees when no such fees and charges could be assessed.

78.     Ocwen violated Civil Code § 1788.17 (via incorporation of 15 U.S.C. § 1692e) by making false, deceptive, and misleading representations in an attempt to collect a debt, and taking action it could not legally take.

79.     Ocwen violated Civil Code § 1788.17 (via incorporation of 15 U.S.C. § 1692c) by failing to cease communicating.

80.     Ocwen violated Civil Code § 1788.17 (via incorporation of 15 U.S.C. § 1692d), by engaging in conduct which had the natural consequence to harass, oppress, and abuse Ms. Sandigo.

81.     Ocwen violated Civil Code § 1788.17 (via incorporation of 15 U.S.C. §1692e(2)(A)) which prohibits misrepresentation of the character, amount, or legal status of the

COMPLAINT AND DEMAND FOR JURY TRIAL

13

1  debt.

2      82.      Ocwen violated Civil Code § 1788.17 (via incorporation of 15 U.S.C. §1692f),

3  which prohibits any unfair or unconscionable means to collect or attempt to collect any debt.

4      83.      Ocwen violated Civil Code § 1788.17 (via incorporation of 15 U.S.C.

5  §1692f(1)),  which prohibits attempts to collect any amount unless such amount is expressly

6  authorized by the agreement creating the debt or permitted by law.

7      84.      Ocwen's violations were willful and knowing.

8      85.      As a result of these violations, Ms. Sandigo has suffered damages, including

9  emotional distress, in an amount to be proven at trial.

10     86.      Plaintiff is entitled to statutory damages, actual damages, reasonable attorney's

11 fees, and costs under Cal. Civil Code §§ 1788.17 and 1788.30, and 15 U.S.C. § 1692k(a)(2)(A).

12     87.      Plaintiff is entitled to treble statutory damages.

13

14                    **THIRD CAUSE OF ACTION**
          **Real Estate Settlement Procedures Act 12 U.S. C. § 2605**

15                         **Against Ocwen**

16     88.      Plaintiff incorporates and realleges all of the preceding allegations as though fully

17 set forth here.

18     89.      Ocwen is a servicer of a federally related mortgage loan and therefore is subject

19 to the RESPA pursuant to 12 U.S.C.§ 2605(e) and Regulation X, 12 C.F.R. Part 1024.

20     90.      As alleged above, Ms. Sandigo submitted letters to Ocwen dated July 26, 2016,

21 November 2, 2016, and December 26, 2016.  Each of the letters met all requirements for a

22 "Notice of Error" under RESPA.  The letters included, or otherwise enabled Ocwen to identify

23 the Plaintiff's name and account, and included a statement of the reasons for the Plaintiff's belief

24 that the account was in error.

25     91.      Pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R. § 1024.35(d), Ocwen was

26 required to acknowledge receipt of the dispute letters within 5 days (excluding legal public

27 holidays, Saturdays, and Sundays).

28     92.      Pursuant to 12 U.S.C. § 2605e(2), and 12 C.F.R. § 1024.35(e), within 30 days

COMPLAINT AND DEMAND FOR JURY TRIAL                                    14

(excluding legal public holidays, Saturdays, and Sundays) after the receipt of the letters, Ocwen was required to:

- make appropriate corrections in Plaintiff's account, including any late charges or penalties, and

- transmit to Plaintiff a written notification of such correction, which included the name and telephone number of a representative of Ocwen who can provide assistance.

93.     Alternatively, if Ocwen determined to not make corrections to Plaintiff's account, it was required to:

• conduct a reasonable investigation;

• provide Plaintiff with a written explanation or clarification that included a statement of the reasons for which Ocwen believed that no error occurred; and

• provide the name and telephone number of an individual employed by, or the   office or department of Ocwen who could provide assistance to the borrower.

94.     Ocwen violated these provisions in multiple ways.

95.     With respect to the July 26, 2016, November 2, 2016 and December 26, 2016 letters, Ocwen failed to promptly make appropriate corrections to Ms. Sandigo's account, or explain the reasons why Ocwen believed that no error occurred. Ms. Sandigo is informed and believes that Ocwen also failed to conduct a reasonable investigation.

96.     With respect to the December 26, 2016 letter, Ocwen failed to acknowledge the letter within 5 business days, or make any response whatsoever.

97.     Ocwen's many and repeated violations of RESPA constitute a "pattern and practice" of violation of the Act.  Pursuant to 12 U.S.C. §2605(f)(1), Ocwen is liable for $2,000.00.

98.     Plaintiff suffered actual damages as a result of Ocwen's willful violations of RESPA, including but not limited to emotional distress damages.

COMPLAINT AND DEMAND FOR JURY TRIAL                                      15

99.     Ocwen is liable for a trebling of RESPA statutory damages.

### FOURTH CAUSE OF ACTION
### Conversion
### Against Ocwen and U.S. Bank

100.    Plaintiff incorporates and realleges all of the preceding allegations as though fully set forth here.

101.    Ms. Sandigo made payments of $1,597.56 from July 2016 to November 2016 because Ocwen demanded such payment amount, and refused to accept a lesser amount.

102.    The $1,597.56 payment unlawfully includes approximately $182.35 in escrow charges related to property taxes, which are illegal because Ocwen did not pay Ms. Sandigo's property taxes.  This totals $911.75 that Ocwen received and deposited, and continues to wrongfully maintain possession and control over.

103.    Ms. Sandigo had a possessory and ownership interest in the monies she paid to Ocwen (under the false representations and coercive statements that she had to pay Ocwen a higher monthly payment than she actually owed and was legally required to pay).

104.    Through its false representations and coercive statements to Ms. Sandigo (that she was required to pay a higher amount than she truly was required) Ocwen intentionally took a possessory interest in the money Ms. Sandigo paid Ocwen, and refused to give her money back, depriving Ms. Sandigo of her personal property.

105.    Ms. Sandigo suffered monetary, out-of-pocket damages, physical harm, and emotional distress and mental anguish as a result of Ocwen's actions.   Ocwen's conduct was a substantial factor in causing this harm to Ms. Sandigo.

106.    Ocwen acted with oppression, and/or malice, thereby entitling Ms. Sandigo to punitive damages in an amount to be determined at trial. Ocwen acted in a despicable manner and acted with a conscious disregard to the rights of Ms. Sandigo.

### FIFTH CAUSE OF ACTION
### Consumer Credit Reporting Agencies Act, Civil Code § 1785.1 et seq.
### Against Ocwen

107.    Plaintiff incorporates and realleges all of the preceding allegations as though fully

1   set forth here.

2       108.    Ocwen, either directly or through their agents, in the ordinary course of business,

3   regularly and on a routine basis furnishes information to one or more "consumer credit reporting

4   agencies", as that term is defined by Cal. Civil Code section § 1785.3(d).

5       109.    California's Civil Code § 1785.25(a) states that a "person shall not furnish

6   information on a specific transaction or experience to any consumer credit reporting agency if

7   the person knows or should know the information is incomplete or inaccurate."

8       110.    Ocwen's acts and omissions violated Civil Code § 1785.25(a) including, but not

9   limited to the below.

10       111.    Ocwen falsely reported to Equifax that Plaintiff owed "amounts past due" in 2015

11   and 2016, when she was current on her mortgage.  For example, in June and July 2016, Ocwen

12   falsely reported an amount past due of $6,111.00.  Ocwen knew or should have known this

13   information was inaccurate or incomplete.

14       112.    Ocwen failed to report complete and accurate information to the national credit

15   reporting agencies, including that Ms. Sandigo disputed the account, when it knew Ms. Sandigo

16   disputed the account on numerous occasions in writing and in telephone conversations with

17   Ocwen representatives.

18       113.    Ms. Sandigo is informed and believes that Ocwen reported inaccurate and/or

19   incomplete information to Equifax on a monthly basis.

20       114.    Numerous times (through many telephone conversations and dispute letters),

21   Ocwen was informed that its accounting with respect to Plaintiff's loan was erroneous and thus

22   knew, or should have known that the information it was reporting about Ms. Sandigo to the

23   national credit reporting agencies was inaccurate and incomplete.  Such conduct was willful and

24   malicious, and subject to punitive damages (to be determined by a trier of fact), pursuant to Cal.

25   Civil Code §1785.31.

26       115.    Based on these violations of Civil Code § 1785.25(a), Plaintiff is entitled to the

27   remedies afforded by Civil Code § 1785.31, including actual damages, pain and suffering,

28   punitive damages, injunctive relief, and attorney's fees.

COMPLAINT AND DEMAND FOR JURY TRIAL                                 17

116.    Ocwen is liable for a trebling of punitive damages.

## SIXTH CAUSE OF ACTION
### Unfair Business Practices (Violation of Cal. Bus. & Prof. Code §§ 17200, *et. seq.*) Against All Defendants

117.    Plaintiff incorporates and realleges all of the preceding allegations as though fully set forth here.

118.    Business & Professions Code §17200, et seq., the "Unfair Competition Law" ("UCL") defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.   The UCL authorizes this Court to issue whatever orders or judgments may be necessary to prevent such practices, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." *Id.* § 17203.

119.    Defendants committed "unlawful" business acts or practices by, among other things, recording a Notice of Default even though Ms. Sandigo was current on her payments, in violation of the California Homeowner Bill of Rights, Cal. Civil Code § 2924.11(c)(1); filing inaccurate and incomplete foreclosure documents, in violation of the Homeowner Bill of Rights, Cal. Civil Code § 2924.17; failing to appropriately and timely respond to disputes submitted under RESPA; engaging in unlawful collection practices in violation of the Rosenthal Act; converting Ms. Sandigo's funds by insisting on excessive payments; and furnishing inaccurate and incomplete information on her credit reports in violation of California Civil Code § 1785.25(a) as alleged in this Complaint.

120.    Ocwen committed "unfair" business acts and practices, including but not limited to, demanding and accepting payments in excess of those required, assessing various fees without justification, refusing to accept Ms. Sandigo's payments, failing to respond substantively to disputes submitted by Ms. Sandigo, failing to even respond to some of the disputes, and ultimately threatening and commencing foreclosure proceedings.

121.    U. S. Bank, through its agent and servicer Ocwen, committed unlawful and unfair business practices by recording a Notice of Default even though Ms. Sandigo was current on her

COMPLAINT AND DEMAND FOR JURY TRIAL                                                      18

1  payments, in violation of the California Homeowner Bill of Rights, Cal. Civil Code §

2  2924.11(c)(1); filing inaccurate and incomplete foreclosure documents, in violation of the

3  Homeowner Bill of Rights, Cal. Civil Code § 2924.17, demanding and accepting payments in

4  excess of those required, assessing various fees without justification, refusing to accept Ms.

5  Sandigo's payments, and ultimately threating and commencing foreclosure proceedings.

6      122.    The Court's intervention is necessary to halt and remedy Defendants' unlawful

7  and unfair acts and practices.

8      123.    Ms. Sandigo is entitled to restitution, declaratory relief, and injunctive relief

9  pursuant to Bus. and Prof. Code § 17203.

10                          **PRAYER FOR RELIEF**

11     WHEREFORE, Ms. Sandigo prays for judgment against Defendants as follows:

12  **Against Ocwen**

13     1.    For equitable and injunctive relief, including a) an Order enjoining defendants

14  from proceeding with foreclosure, b) an Order requiring rescission of the Notice of Default and

15  any Notice of Trustee's Sale subsequently filed, c) an accounting, d) an Order requiring

16  Defendants to revoke all demands for property tax based escrow payments and other fees and

17  charges arising out of defendants unjustified demand for such escrow payments, e) an Order

18  requiring Ocwen to correct Plaintiff's credit report, and f) further relief as the Court may deem

19  just;

20     2.    For restitution of excess payments;

21     3.    For actual damages, including damages for emotional distress under all applicable

22  law, including 15 U.S.C. § 1692k(a)(1); Cal. Civil Code; 12 U.S.C. § 2605(f)(1)(A); Cal. Civil

23  Code § 1785.31(a)(2)(A), and Cal. Civil Code § 1788.30(a);

24     4.    For statutory, and punitive damages pursuant to all applicable law, including Cal.

25  Civil Code § 3294 *et seq.*, 15 U.S.C. § 1692k(a)(2)(A), 12 U.S.C. § 2605(f)(1)(B), Cal. Civil

26  Code § 1785.31(a)(2)(B) and Cal. Civil Code § 1788.30(b);

27     5.    For an award of punitive damages to deter further unlawful conduct pursuant to

28  Cal. Civil Code section 1785.31 of up to $5,000 per violation;

COMPLAINT AND DEMAND FOR JURY TRIAL                                    19

6.      For an award of punitive damages, pursuant to Cal. Civil Code section 3294;

7.      $911.75 in converted funds, with interest from the time of conversion;

8.      For an award of attorney's fees, costs and expenses;

9.      Fair compensation for the time and money properly expended in pursuit of the converted funds;

10.     Treble damages pursuant to Civil Code section §3345;

11.     Pre-judgment and post judgment interest at the legal rate; and

12.     For such other and further relief as the court may deem proper.

**Against U.S. Bank**

1.      For equitable and injunctive relief, including a) an Order enjoining defendants from proceeding with foreclosure, b) an Order requiring rescission of the Notice of Default and any Notice of Trustee's Sale subsequently filed c) an accounting, d) an Order requiring Defendants' to revoke all demands for property tax based escrow payments and other fees and charges arising out of defendants unjustified demand for such escrow payments, and e) further relief as the Court may deem just;

2.      For restitution of excess payments;

3.      For an award of attorney's fees, costs and expenses;

4.      Pre-judgment and post judgment interest at the legal rate;

5.      For an award of punitive damages, pursuant to Cal. Civil Code section 3294;

6.      Treble damages pursuant to Civil Code section §3345; and

7.      For such other and further relief as the court may deem proper.


DATED:  April 11, 2017                 CONSUMER LAW OFFICE OF WILLIAM E.
                                       KENNEDY
                                       DUPRE LAW FIRM, P.C.


                              By       _____
                                       William E. Kennedy
                                       Attorneys for Phyllis Sandigo

COMPLAINT AND DEMAND FOR JURY TRIAL                                              20

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

DATED:  April 11, 2017              CONSUMER LAW OFFICE OF WILLIAM E.
                                    KENNEDY
                                    DUPRE LAW FIRM, P.C.


                          By    _____
                                    William E. Kennedy
                                    Attorneys for Phyllis Sandigo

COMPLAINT AND DEMAND FOR JURY TRIAL

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| William E. Kennedy SBN 158214<br>Consumer Law Office of William E. Kennedy<br>2797 Park Avenue, Suite 201<br>Santa Clara, CA 95050 | **(ENDORSED)**<br>**F I L E D** |

TELEPHONE NO: (408) 241-1000   FAX NO: (408) 241-1500

ATTORNEY FOR (Name): Plaintiff Phyllis Sandigo

APR 11 2017

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY
G. Reyes

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SANTA CLARA

STREET ADDRESS: 191 North First Street

MAILING ADDRESS: 191 North First Street

CITY AND ZIP CODE: San Jose, CA 95113

BRANCH NAME:

CASE NAME:

CASE NUMBER: 17CV308431
C V 308431

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** |  |  |
|---|---|---|---|
| ☑ **Unlimited**<br>(Amount demanded exceeds $25,000) | ☐ **Limited**<br>(Amount demanded is $25,000 or less) | ☐ **Counter**  ☐ **Joinder**<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☑ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): 6 (HBOR, Rosenthal,RESPA, Conversion,CCRAA, B&P 17200)
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 11, 2017

William E. Kennedy
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) (*if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability (*not asbestos or
    toxic/environmental*) (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) (*not civil
    harassment*) (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract (*not unlawful detainer
            or wrongful eviction*)
    Contract/Warranty Breach–Seller
        Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage (*not provisionally
    complex*) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent
        domain, landlord/tenant, or
        foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    (*arising from provisionally complex
    case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment (*non-
        domestic relations*)
    Sister State Judgment
    Administrative Agency Award
        (*not unpaid taxes*)
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
    above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-
        harassment*)
    Mechanics Lien
    Other Commercial Complaint
        Case (*non-tort/non-complex*)
    Other Civil Complaint
        (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition (*not specified
    above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA 95113*

CASE NUMBER: **1 7 C V 3 0 8 4 3 1**

## PLEASE READ THIS ENTIRE FORM

*PLAINTIFF* (the person suing): .Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued): **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint;*
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

   **Warning: If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

*RULES AND FORMS:* You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms: www.courts.ca.gov/forms.htm and www.courts.ca.gov/rules.htm
- Local Rules and Forms: www.scscourt.org

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC.  You may ask to appear by telephone – see Local Civil Rule 8.*

---

*Your Case Management Judge is:* _____ **William Elfving** _____ *Department:* __3__

*The 1st CMC is scheduled for:* (Completed by Clerk of Court)
            *Date:* 8/01/2017   *Time:* 2:15pm  in Department: __3__

*The next CMC is scheduled for:* (Completed by party if the 1st CMC was continued or has passed)
            *Date:* _____  *Time:* _____  in Department: _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.scscourt.org or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SANTA CLARA COUNTY SUPERIOR COURT
# ALTERNATIVE DISPUTE RESOLUTION
# INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### What is ADR?
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### What are the advantages of choosing ADR instead of litigation?
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### What are the main forms of ADR offered by the Court?
**Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation,** sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:
- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:
- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would he helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*
Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*

| | |
|---|---|
| Santa Clara County Superior Court | Santa Clara County DRPA Coordinator |
| ADR Administrator | 408-792-2784 |
| 408-882-2530 | |

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET**
**CIVIL DIVISION**