UNITED STATES DISTRICT COURT OF CALIFORNIA,

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Phyllis Sandigo,<br><br>    Plaintiff,<br><br>    v.<br><br>Ocwen Loan Servicing, LLC and U.S. Bank National Association, as Trustee for GSAA Home Equity Trust 2007-3, Asset Backed Certificates, Series 2007-3 and Does 1-100,<br><br>    Defendants. | **JOINT DISCOVERY LETTER PURSUANT TO JUDGE COUSINS' CIVIL STANDING ORDER**<br><br>**Case 5:17-cv-02727 - BLF** |

**Plaintiff's Statement:** Since the last discovery hearing, Ocwen has produced no additional documents nor provided any supplemental responses to interrogatories. Ocwen has now agreed to most of plaintiff's positions, but has not actually provided the additional discovery promised. *NOTE: Ocwen provided its contribution to this letter, document production, and supplement interrogatory responses on 3/9/18 at/after 4:45 pm, leaving plaintiff no time to respond.*

**Ocwen's Response:** Ocwen has produced 3561 pages of documents and an additional 517 pages and supplemental responses to Plaintiff's interrogatories on March 9, 2018. Admittedly delayed, Ocwen's production has been hampered due to the voluminous nature of Plaintiff's requests, discussed in detail below, as well as intervening winter storms that caused closures of Ocwen's Pennsylvania office. Ocwen suggested an additional extension of the meet and confer deadlines to allow Plaintiff the opportunity to review these responses and documents, but Plaintiff declined to do so. Ultimately, Ocwen has substantially complied with Plaintiff's document requests, producing 4078 pages of documents as well as responses to interrogatories and requests for admissions.  While the delay is regrettable, it has not prejudiced Plaintiff as discovery cut-off is not until November 30, 2018 and trial in this matter is not set until June 24, 2019. On these grounds, Ocwen submits that it should not be sanctioned, and certainly not in the exorbitant amounts requested by Plaintiff.

**Plaintiff's Statement: Interrogatories**
On February 13, 2018, just before the February 14, 2018 hearing, Ocwen served revised interrogatory responses. (Exh. 1)  In these responses, Ocwen still didn't substantively respond to any of the interrogatories, but instead repeatedly referred plaintiff to the voluminous and often cryptic document production to find the answers, apparently pursuant to FRCP 33(d).  After plaintiff's meet and confer letter (Exh. 3), and a telephonic meet and confer on February 22, 2018, Ocwen agreed to provide substantive responses to Nos. 1, 2, 3, 4, 5, 7, 8, 11, 12, 13, and 14 (Exh. 4). However, no responses have been received.

**Ocwen's Response:** Supplemental responses to interrogatories numbers 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14 were provided on March 9, 2018.  Ocwen suggested an extension of the meet and confer deadlines and the March 21 hearing to allow Plaintiff the opportunity to review and further meet and confer, but Plaintiff declined.

**Plaintiff's Statement:**
   A few interrogatories merit individual discussion:
***INTERROGATORY NO. 6:***
IDENTIFY all of YOUR employees or agents who spoke directly to Ms. Sandigo or others in her household on or after July 1, 2016.
   Ocwen has not agreed to supplement.  The documents produced state employees' name, but no other identifying information, as required by the definition of "IDENTIFY" (ECF No. 40-1, p. 3) Ocwen's counsel agreed to confer with his client on updating Ocwen's response, but plaintiff has received no follow-up.

**Ocwen's Response:** Ocwen has supplemented its response to this interrogatory and provided the names of the employees and agents that spoke with Ms. Sandigo on or after July 1, 2016. Additionally, Ocwen has also provided a log to Plaintiff that clearly identifies every employee that spoke with Plaintiff during the identified time period. The log also describes the content of each call. Rather than narrow her request to specific conversations with specific individuals, Plaintiff has asked for a list of names (which have been provided), titles, work addresses, city and state of residence of all identified employees, purportedly for the purposes of deposing these employees. Ocwen submits that Plaintiff's request is overbroad and not proportional to the needs of the case. *See* F. R. C. P. 26(b)(1). It also seeks information that is not relevant, since Plaintiff has not narrowed the scope to particular employees or conversations, and accordingly requires the production of burdensome discovery that outweighs the likely benefit. Ocwen has requested from

Plaintiff, and hereby submits, that Plaintiff should narrow the list of employees that she wants to potentially depose, based on the contents of the conversation described in the comments log, following which Ocwen will supplement this response.

**Plaintiff's Statement:**

*INTERROGATORY NO. 9:*

*Describe all mistakes YOU made, as stated in paragraph eight (8) of YOUR Answer.*

Plaintiff has withdrawn this interrogatory due to the fact that on February 28, 2018, Ocwen filed an amended Answer which eliminated all affirmative defenses, including the "mistake" affirmative defense previously alleged. (ECF No. 59)

*INTERROGATORY NO. 10:*

*Describe YOUR credit reporting to any credit reporting agency regarding Ms. Sandigo's account for each month beginning in January 2013. This would include each field reported using Consumer Data Industry Association, Metro 2, or Automated Universal Data form (AUD) formats, including but not limited to payment history, past due amount, recent balance, monthly payment, recent payment, and balance history.*

Certain information concerning Ocwen's credit reporting appears in Ocwen's records. Plaintiff has indicated that she will agree to obtain the information sought from these records, if Ocwen will explain all abbreviations and codes used, identify to which credit reporting agencies the information was reported, produce records which come up to date (the documents produced only cover through 2017), and explain the significance of the term "CORRECTION" which appears on several entries. (Exh. 5)  Ocwen has not done so.

**Ocwen's Response:** Ocwen has provided a supplemental response to this interrogatory as well as provided Plaintiff with a list explaining all abbreviations and codes, as well as the AUD's and Automated Credit Dispute Verification forms related to its reporting of Plaintiff's account to the credit reporting agencies.

**Plaintiff's Statement:**

*INTERROGATORY NO. 15:*

*Describe all audio recordings (including times and dates) of any telephone call that YOU made or received regarding Ms. Sandigo (including messages left on a voice mail or answering machine).*

This interrogatory may be considered together with RFP No. 1(e), which sought production of such audio recordings.  Ocwen's original response was that it would produce these documents. (ECF No. 40-3, RFP 1(e)).  Ocwen has since claimed that there are hundreds of recordings, that producing them all is overly burdensome and that many calls resulted in no conversation or message. On March 6, 2018 the parties agreed that Ocwen may produce a list of all recorded calls, and plaintiff will then identify which recordings it wants produced. The parties discussed a timetable as such: production of the list of calls within 48-72 hours (i.e. by March 9), and production of the audio recordings by Friday, March 16.

**Ocwen's Response:** Plaintiff has asked for a description of and a production of every telephone call, inbound and outbound, since **2011 to the present**. Her RFP and interrogatory include no limitations whatsoever as to the time or scope of this production. Over this 6-7 year period, Ocwen has exchanged hundreds of telephone calls with Plaintiff, and importantly, <u>each one is identified, along with a short description</u>, in the comments log provided to Plaintiff.[1] In other words, <u>Plaintiff already has a list of all these calls</u>, and requiring Ocwen to compile a duplicative list is overly burdensome and not proportional to the needs of this case. *See* F.R.C.P. Rule 26(b)(1); *see also*

---

[1] By way of example, Ocwen exchanged 29 telephone calls with Plaintiff between August and December of 2011.

JOINT DISCOVERY LETTER                                                                                                2

F.R.C.P. Rule 33(d) (allowing Ocwen to produce business records in order to respond to an interrogatory). Contrary to Plaintiff's assertion, Ocwen has properly asserted objections to both the RFP and the interrogatory, including objections based on relevancy, proportionality, and the request's compound nature. Notwithstanding the foregoing, Ocwen has supplemented its response to identify the specific documents by Bates number that is responsive to this request. Ocwen asserts that it has substantially complied with this request and if Plaintiff desires certain call recordings, she should identify those specific recordings from the comments log provided to her, rather than force Ocwen to compile and produce audio recordings over a 6-7 year period that likely exceed tens of hours. In any event, Ocwen did agree to produce a list of all recorded calls, and Plaintiff will then identify which recordings it wants produced. While counsel for Ocwen had hoped this could have occurred in the time frame mentioned, Ocwen has advised that it needed additional time to compile the list. Ocwen will produce this list as soon as the compilation is complete.

**Plaintiff Statement:**
*INTERROGATORY NO. 16:*
*Describe each time YOU attempted to telephone Ms. Sandigo in 2016 and 2017, including (a) the date and time of the call, (b) whether contact with someone at Ms. Sandigo's household was made, (c) whether a message was left, (d) the purpose of any call YOU made to Ms. Sandigo's household, and (e) the content of any discussion.*

During the meet and confer, plaintiff agreed to obtain the answers to this interrogatory by reference to the Detail Transaction History produced by Ocwen, if Ocwen supplemented its discovery response to answer specific issues which were not made clear in the DTH. Plaintiff set forth such issues in a letter dated March 4, 2018. (Exh. 5) Ocwen has not done so.

**Ocwen's Response:** Ocwen has produced a list of abbreviations and codes that provide additional information regarding the purpose of Ocwen's outbound calls. Additionally, Ocwen has supplemented its response to this interrogatory to identify the specific documents by Bates number that is responsive to this request. The comments log otherwise provides sufficient information describing the contents of the calls, and to the extent Plaintiff desires additional information, she is invited to make a narrowly-tailored request for that call recording, as discussed above, which Ocwen will produce upon receipt. In short, Ocwen has complied with this request under Rule 33(d). Ocwen is concerned that Plaintiff is exceeding the interrogatory limit under Rule 33(a) by continuously expanding the scope of her interrogatories.

**Plaintiff's Statement:**
*INTERROGATORY NO. 17:*
*IDENTIFY each lawsuit which alleged a violation of section 1785.25(a) of the California Civil Code in which YOU were named a defendant from 2013 to the present.*

Plaintiff agreed to withdraw this interrogatory, if Ocwen produces the documents sought by RFP No. 25.

*INTERROGATORY NO. 18:*
*IDENTIFY each lawsuit filed in or after 2012 in which the plaintiff alleged that YOUR response to a Qualified Written Request or Notice of Error violated the Real Estate Settlement Procedures Act ("RESPA").*

During meet and confer, plaintiff narrowed this request to include only cases in which a claim based on an allegation that Ocwen's response to a Qualified Written Request or Notice of Error violated RESPA survived a summary judgment motion, or where a judgment was entered against Ocwen on such a claim.

**Ocwen's Response:** Even with this narrowing, Plaintiff's interrogatory violates the scope of discovery required under Rule 26(b). Importantly, Plaintiff has not made a showing for why this

information is relevant to her claims in this case. A claim that survives summary judgment merely indicates that there was a triable issue of fact in that case, and a judgment against Ocwen is irrelevant as the facts of every case are different. To the extent that Plaintiff claims to require this information to establish a "pattern and practice" under RESPA, it has been held that such a showing can be made with reference to Plaintiff's loan itself, without the need for information from other cases. *See Lawther v. Onewest Bank*, 2010 WL 4936797, at *7 (N.D. Cal. 2010). Ocwen has properly objected to this interrogatory on the basis of relevance and the interrogatory's burdensome nature.

**Plaintiff's Statement:**
**Requests for Production**

The deficiencies in Ocwen's responses to RFP fall into three categories. First, after meeting and conferring, Ocwen has now agreed to produce documents in response to certain document requests to which it previously objected, but has not actually done so.  Second, Ocwen continues to object to some requests.  Third, there are multiple documents which fall within the categories of documents which Ocwen has agreed to produce, which it has not produced.  Plaintiff is aware of these documents through their experience in other litigation with mortgage servicers and with Ocwen specifically.

With respect to the first category, Ocwen agreed to produce documents in response to RFP Nos. 10, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 28 (to which it previously objected) (Exh. 2, Exh. 4 p. 6).  However, no revised response nor supplemental production has been made.

Of the Requests listed above, Plaintiff reworded Request Nos. 10, 16, 19, 20, 23, 24, and 28 to address Ocwen's concerns. (Exh. 2).  The parties agreed that Ocwen will insert the language of the revised requests in its responses, rather than requiring plaintiff to serve a new set of requests. (Exh. 4, pp. 5-6).

**Ocwen's Response:** Ocwen's has produced documents responsive to Request No. 10 in its original production. With respect to Request No. 23 as reworded, these documents do not exist and Ocwen has supplemented its response.  With respect to the remaining requests, Ocwen did not unequivocally agree to produce these documents, and is currently standing on its objections.

With respect to the second category, Ocwen has not agreed to respond to the following requests:

#15   *All subscriber agreements between YOU and Trans Union, Equifax, and Experian in effect in 2016 or 2017.*

Plaintiff contends that the respective duties of the credit reporting agencies and Ocwen (the furnisher) set out in the agreement is relevant to plaintiff's claim that Ocwen's failure to correct its error after receiving plaintiff's disputes was willful. Such document was ordered produce in *Morgan v. Discovery Bank*, et al, CV 17-2452(SJF), (E.D.N.Y. February 12, 2018) (ordering Discover to produce "its contractual agreements with its credit reporting agencies." (Exh. 4, pp. 6 and attachment thereto).

**Ocwen's Response**: Ocwen disagrees that the information sought is relevant or proportional to the needs of the case, and has asserted appropriate objections. Whether Ocwen violated a duty owed to a credit reporting agency pursuant to a subscriber agreement is irrelevant to whether Ocwen willfully violated a duty owed to Plaintiff to correct disputes. A subscriber agreement outlines the respective rights and remedies that Ocwen and each credit reporting agency owes to each other. Plaintiff is not a party to these agreements, nor has she established that she is an intended third party of the agreements. This request exceeds the scope of Rule 26 and Ocwen should not be compelled to respond to it.

#25   *All complaints/petitions, including amended complaints/petitions, judgments, and consent orders RELATED TO YOUR conduct in credit reporting under the Federal Fair Credit Reporting Act (15 U.S.C. 1681s-2(b) or California's credit reporting law (Cal. Civil Code*

*1785.25(a)) from 2012 to the present.*

#27   *All DOCUMENTS RELATED TO any complaints regarding any state attorney general's office against YOU, regarding credit reporting, including YOUR investigation in response to those complaints, from 2012 to the present.*

(Plaintiff has withdrawn RFP #26, which related to Better Business Bureau complaints.) Ocwen has been compelled to respond to requests substantially the same as Nos. 25 and 27 in the recent case of *Shreve v. Ocwen*, Yolo County Superior Court Case No. cv-2016-848. (Exh. 2, pp. 4-5 and attachments thereto).  Mr. Dupre was plaintiff's counsel in that case. It is probable that Ocwen, or their attorneys in *Shreve*, have these documents in electronic form. Ocwen's counsel has agreed to see if the documents are available, but no response has been received.

**Ocwen's Response:** As an initial matter, Plaintiff's counsel concedes above that he already has access to this information, highlighting the impropriety and burdensome nature of his requests. That said, Ocwen has asserted appropriate objections to these requests on the basis of relevance and their burdensome nature. These requests are blatantly overbroad and seek information that is not relevant for Plaintiff to prove her claims. As a large mortgage servicer, Ocwen is bombarded with consumer complaints on a daily basis, most with no merit that are resolved with a letter to the borrower and government agency. To require Ocwen to compile and produce a list of every such complaint over a 6 year period is blatantly overbroad. More importantly, Plaintiff has not made a showing for why these documents are relevant. Specifically, every borrower complaint to Ocwen over a 6-year period, without any regard to the underlying allegations, whether the allegations have merit, whether any action was taken based on these allegations, or whether the underlying loans even exist, is not relevant to any of Plaintiff's claims in this case. To the extent that Plaintiff claims to require this information to establish a "pattern and practice" under RESPA, it has been held that such a showing can be made with reference to Plaintiff's loan itself, without the need for information from other cases. *See Lawther*, 2010 WL 4936797, at *7.  Accordingly, Ocwen maintains its objections to this request.

**Plaintiff's Statement:**
Third, plaintiff identified seven categories of documents which plaintiff believe exists, which were not included in Ocwen's document production, though they fall within a category of documents that Ocwen agreed to produce in its original responses. (Exh. 5, pp. 3-4)  Among these are the Automated Consumer Dispute Verifications (ACDVs), internal emails, screenshots, document dated after the lawsuit was filed, and keys to abbreviations and codes used in Ocwen documents.

 **Ocwen's Response:** Ocwen has produced ACDVs, keys to abbreviations and codes and are in the process of producing documents dated after the lawsuit was filed, which were not demanded until recently. Plaintiff's request for screenshots is overbroad and not narrowly tailored to produce relevant documentation. Ocwen's proprietary software includes thousands of "screens." Plaintiff has essentially asked Ocwen and its counsel to click through every such screen to take a screen shot, a task that is unduly burdensome. More importantly, the information contained in these screens has been provided to Plaintiff in alternate formats, such as the comments log, the payment history and the entire loan file, numbering 4078 pages. Requiring Ocwen to engage in this duplicative discovery is not proportional to the needs of this case and is frankly harassing. Similarly, internal correspondence between Ocwen departments is listed in the comments log and numbers in the thousands. Plaintiff has again made a duplicative request for information that has otherwise been provided to her. To the extent Plaintiff desires particular correspondence  based on her review of the comments log, she can make a supplemental request for those correspondence.

**Plaintiff's Statement:**
Ocwen also has failed to comply with *Horton v. Cavalry Portfolio Servs., LLC*, No. 13-0307-JAH(WVG), 2014 U.S. Dist. LEXIS 102572, at *2-6 (S.D. Cal. July 24, 2014) (which bars RFP

JOINT DISCOVERY LETTER                                                                                                       5

responses "subject to and without waiving" objections), and has failed to produce a privilege log explaining the reasons for its redactions.

**Ocwen's Response:**  Ocwen does not believe that *Horton* case is controlling on this matter. Additionally, a privilege log is being produced on March 9, 2018 with the supplemental responses and additional documents.

**Plaintiff's Statement: Sanctions**

 Ocwen's discovery delay and obstruction in this case is not an isolated incident.  In addition to this Court's Discovery Order on February 14, 2018, attached are numerous court orders compelling Ocwen to comply with basic discovery. (Exh. 6)  Indeed, one Court stated in issuing sanctions against Ocwen, "either counsel of record have not given this case the amount of attention necessary to bring discovery to a close, or Ocwen itself has not taken these proceedings seriously, or both."  (Exh. 6, p. 3)  On March 5, 2017, plaintiff presented a demand for sanctions in the amount of $18,955 to Ocwen, which includes time spent through March 5, 2018, plus an additional 5 hours for anticipated time by Mr. Kennedy to draft this letter and appear at the March 21, 2018 hearing.  Plaintiff's counsel presented minimally redacted timeslips in support.  Exh. 7.  No response has been received.

**Ocwen's Response:** Based on its responses to Plaintiff's overbroad and, in some cases, harassing requests for discovery, Ocwen does not believe that it should be sanctioned in this matter. Ocwen's objections are reasonable and brought in good faith, as discussed above. Moreover, Ocwen has produced 4078 pages of responsive documents and responses to interrogatories and admissions that comply with its discovery obligations. While there has admittedly been a delay in producing documents and responses, the delay has in large part been caused by the excessively broad scope of discovery sought, and ultimately has not resulted in prejudice to Plaintiff as discovery cut-off is not until November 30, 2018.  To the extent that the Court deems that Plaintiff's counsel should be compensated without having prevailed on a motion to compel, Ocwen submits that the amount should be much lower than the exorbitant amounts sought by Plaintiff.[2] Plaintiff's submission of orders in other cases is not relevant to this case and does not provide any analysis of the discovery disputes raised in those cases, sufficient for this Court to draw parallels to this case, assuming such analysis were appropriate in the first place. Moreover, and tellingly, the highest award of sanctions against Ocwen in the orders submitted by Plaintiff is $2,000. It is not clear why Plaintiff believes that a demand of over $20,000 is reasonable under these circumstances.

The unreasonableness of Plaintiff's demand is further evidenced by the excessively high billable rate at which counsel seeks to be compensated, for which no justification has been provided based on experience, education or expertise. Additionally, Plaintiff's demand seeks compensation for tasks that counsel would have had to undertake regardless of the meet and confer process, such as their multiple reviews of Ocwen's responses. Still further, several tasks that Plaintiff's counsel undertook were in response to Ocwen's appropriate objections, which resulted in a narrowing or withdrawal of Plaintiff's requests/interrogatories, as conceded in their portion of this letter. Clearly, Ocwen should not be made to compensate Plaintiff's counsel for objections that Plaintiff ultimately conceded as being appropriate. Even where not conceded, counsel seeks compensation for research that Ocwen believes is not appropriate in the context of this meet and confer, such as the research regarding other discovery rulings against Ocwen. Finally, Ocwen objects to the duplicative nature of the tasks for which Plaintiff seeks compensation, such as both counsel's review of Ocwen's responses, internal communication and duplicative research.

---

[2] Ocwen also requests the opportunity to fully brief these issues in a motion to compel brought pursuant to FRCP 37.

JOINT DISCOVERY LETTER                                                                                                     6

If this Court deems that Plaintiff is entitled to compensation for some of the attorneys' fees incurred by her counsel in this process, Ocwen believes the amount should be reduced to no more than $2,000, which represents the maximum award entered against Ocwen in the cases Plaintiff cites for support.

DATED: March 9, 2018                CONSUMER LAW OFFICE OF WILLIAM E.
                                    KENNEDY;DUPRE LAW FIRM, P.C.

                            By      /s/
                                    William E. Kennedy
                                    Attorneys for Phyllis Sandigo


                                    **McGLINCHEY STAFFORD**

DATED: March 9, 2018


                            By:_____
                                    ADAM HAMBURG
                                    DHRUV SHARMA
                                    Attorneys for *Defendants* OCWEN LOAN
                                    SERVICING, LLC and U.S. BANK NATIONAL
                                    ASSOCIATION, as Trustee for GSAA Home
                                    Equity Trust 2007-3, Asset-Backed Certificates,
                                    Series 2007-3