KRISTIN L. WALKER-PROBST (State Bar No. 206389)
kristin.walker-probst@wbd-us.com
NADIA D. ADAMS (State Bar No. 270428)
nadia.adams@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
3200 Park Center Drive, Suite 700
Costa Mesa, California 92626
Telephone: (714) 557-3800
Facsimile: (714) 557-3347

MARY KATE SULLIVAN (State Bar No. 180203)
mks@severson.com
ALISA A. GIVENTAL (State Bar No. 273551)
aag@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendant
OCWEN LOAN SERVICING, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA — SAN JOSE DIVISION

| | |
|---|---|
| PHYLLIS SANDIGO,<br><br>        Plaintiff,<br><br>vs.<br><br>OCWEN LOAN SERVICING, LLC and U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2007-3, ASSET BACKED CERTIFICATES, SERIES 2007-3 and DOES 1-100,<br><br>        Defendants. | Case No. 5:17-cv-02727-BLF<br>Hon. Beth Labson Freeman<br>Ctrm. 3<br><br>**DECLARATION OF KRISTIN WALKER-PROBST IN SUPPORT OF REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:   March 28, 2019<br>Time:              9:00 a.m.<br>Ctrm.:             3<br><br>Action Filed:    April 11, 2017<br>Removal Date: May 11, 2017<br>Trial Date:      August 19, 2019 |

I, KRISTIN L. WALKER-PROBST, declare and state as follows:

1. I am an attorney admitted to practice before this Court. I am a Member of Womble Bond Dickinson (US) LLP, attorneys of record for Defendant, OCWEN LOAN SERVICING, LLC ("Defendant"), in this matter. I make this declaration in support of Defendant's Motion for Summary Judgment, or Alternatively, Partial Summary Judgment. I have personal knowledge of the matters set forth in this declaration, and if called upon to do so, I could and would testify competently to the same.

2. Attached hereto as Exhibit A is a portion of the expert report of Evan Hendricks, which was produced to me by opposing counsel in this case pursuant to the stipulated expert disclosure date. Although his declaration in dismisses the CRRG as "not binding," in his expert report in this case and others, Hendricks concedes that: the CRRG "sets forth the industry standards for participants in the credit reporting industry," creation of the CRRG directly involves the CRAs, "it is designed to assure compliance with the accuracy standards set for by the federal and state credit reporting statutes," and "the principal source of nearly all of the industry-created implementation standards for consumer credit reporting in the credit reporting industry." (*See* Hendricks expert report at pp.13-14).

3. Plaintiff has known about Ocwen's *res judicata* defense since October 19, 2018, at the latest, when Ocwen's designated deponent under Rule 30(b)(6), Kevin Flannigan, explained it at his deposition. I was present for the deposition and had a discussion with opposing counsel, William Kennedy, about the res judicata defense. He asked if Ocwen would be amending its discovery responses based on this defense and I advised that it would. I also agreed to produce Mr. Flannigan for an additional deposition where opposing counsel could further inquire about the facts and circumstances surrounding this defense. That deposition went forward on January 25, 2019. Additionally, Ocwen amended its discovery responses based on the res judicata defense and provided opposing counsel with a draft brief regarding this defense (at opposing counsel's request). Moreover, Plaintiff propounded – and Ocwen responded to – additional written discovery based specifically on Ocwen's assertion of the defense.

///

4.  Paragraph 34 of Plaintiff's declaration contradicts Plaintiff's prior sworn deposition testimony despite the effort to couch it as an "explanation." I took Plaintiff's deposition and asked her open-ended questions regarding whether or not Ocwen's alleged lack of response to her letters impacted her stress levels. Her responses were clear that it was not Ocwen's lack of response that caused her the purported distress. Rather, she wanted Ocwen to agree with her position that she owed the lesser amount. Thus, if anything caused her stress, it was the disagreement between her and Ocwen as to the she amount owed, not the failure of Ocwen to adequately explain why she was incorrect. Attached as Exhibit B hereto are portions of Plaintiff's deposition. The following is the relevant exchange:

> Q: What was the point of the letters? A: It was to show Ocwen I was not six months behind on my payments because for four years that they asked me to send them of my statements, all the pages, I circled every payment and they were all there.
>
> Q: And so what were you looking for from Ocwen in terms of their response? What would make you feel better?
>
> A: If they would admit that this was correct and I was not behind on my payments and if they would admit that my payment was 1415 like it said in the statements they were sending me before, and it would prove that somebody was paying attention to all the work I was doing that Ocwen was saying was all incorrect.
>
> Q: Other than Ocwen agreeing with you, would there have been any other response that would have been satisfactory?
>
> A: Yes. That they would have a check.
>
> Q: Which check are you talking about?
>
> A: The insurance check.
>
> Q: So I'm not there. You wrote some letters regarding your bank statements?
>
> A: If they would have agreed that I was not six months behind on my payments, if they would -- they said if I proved it, they'd send me a check for 6, $7,000, if they would put my payment like it was supposed to be at 1415.

| | |
|---|---|
| 1 | Q: Would it have been less stressful for you if Ocwen had explained to why you |
| 2 | were delinquent? |
| 3 | A: No. |
| 4 | Q: What would've caused the stress to go down would be for them to agree is you |
| 5 | were not delinquent is my understanding; right? |
| 6 | A: If what? |
| 7 | Q: It wouldn't have helped for them to explain or articulate you were delinquent. |
| 8 | What you were looking for was them to agree with the proof that you were |
| 9 | providing that you were not delinquent. |
| 10 | A: I was looking for them to fix all the problems that they were wrong about. Yes. |
| 11 | Q: So short of Ocwen agreeing that they were wrong, it still would have been |
| 12 | stressful to you? |
| 13 | A: It would have to have been fixed. |
| 14 | Q: When you say fixed you mean that Ocwen would need to agree with your |
| 15 | position that you were not delinquent? |
| 16 | A: They would have to fix my credit. They would have to bring my payment |
| 17 | where it's supposed to be. |
| 18 | Q: So really what was at the heart of the frustration was that Ocwen was insisting |
| 19 | you owed more than you thought you did? |
| 20 | A: Yes. [Sandigo Depo. at 102:16 – 104:13]. |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed March 14, 2019, at Costa Mesa, California.

*/s/ Kristin Probst*

Kristin L. Walker-Probst