William E. Kennedy California Bar No. 158214
CONSUMER LAW OFFICE OF WILLIAM E. KENNEDY
2797 Park Avenue, Suite 201
Santa Clara, California 95050
Telephone: (408) 241-1000
Facsimile:  (408) 241-1500
Email: wkennedy@kennedyconsumerlaw.com

Ben Dupré California Bar No. 231191
DUPRÉ LAW FIRM PROF. CORP.
3567 Benton St. # 171
Santa Clara, CA 95051
Telephone: (408) 874-5300
Facsimile: 408) 727-5310
Email: bendupre@gmail.com

Attorneys for Plaintiff PHYLLIS SANDIGO

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Phyllis Sandigo,<br><br>      Plaintiff,<br><br>v.<br><br>Ocwen Loan Servicing, LLC and U.S. Bank National Association, as Trustee for GSAA Home Equity Trust 2007-3, Asset Backed Certificates, Series 2007-3,<br><br>      Defendants. | 5:17-cv-02727 BLF<br><br>**PLAINTIFF'S OPPOSITION TO OCWEN'S MOTION IN LIMINE #1 (Evan Hendricks)**<br><br>Date:  June 21, 2019<br>Time:  1:30 p.m.<br>Courtroom 3, Fifth Floor<br>Hon. Beth Labson Freeman<br><br>Action Filed: April 11, 2017<br>Trial Date: August 19, 2019 |

## I.    INTRODUCTION

The reason for Ocwen's concern about the anticipated testimony of Evan Hendricks is easily understood by reference to its recent litigation history. In *Daugherty* v. *Owen* 5:14-cv-24506 (WV 2016) Judge Berger of the West Virginia District rejected Ocwen's motion to exclude him from testifying in a case where the issues were identical to this case – namely, (1) the reasonableness (or lack thereof) of Ocwen's so-called "investigations" of the Plaintiff's disputes, and (2) the harm Ocwen's failures caused to the Plaintiff's creditworthiness. (Ruling from the Bench rejecting Ocwen's motion to exclude Mr. Hendricks' testimony of the Honorable Judge Irene C. Berger attached as **Exhibit 2** to Dupre Declaration.)

The U.S. Court of Appeals for the Fourth Circuit rejected Ocwen's appeal which asserted that Judge Berger erred in admitting Mr. Hendricks' testimony. (Fourth Circuit's Opinion attached as **Exhibit 3** to Dupre Declaration.) *Daugherty v. Ocwen Loan Servicing, LLC* 701 Fed. Appx. 246 (2017).

Having been found guilty of violating the FCRA, based in part on Mr. Hendricks' testimony, it is understandable that Ocwen does not want to allow Mr. Hendricks here to repeat testimony he gave previously.  But the law and facts unequivocally mandate that once again Ocwen's position be rejected, as Mr. Hendricks is eminently qualified, and, just as in *Daugherty*, his testimony will be relevant, reliable and helpful to the jury.

Moreover, Ocwen attempts to apply an incorrect legal standard in arguing that the *Daubert* factors for scientific analysis apply.  Simply put, Mr. Hendricks is a specialized knowledge expert who can help the jury understand how and why the derogatory Ocwen tradeline harmed Plaintiff's creditworthiness.  He is not a scientific expert, so any scientific protocols clamored for by Ocwen are not applicable.

Mr. Hendricks' conclusion was that Ocwen damaged Ms. Sandigo's creditworthiness in

two ways: (1) the past-due balance rendered her ineligible for most major forms of credit -- because creditors won't extend credit to consumers with past-due balances on their credit reports, and (2) the derogatory 180-days late "status,' coupled with the past-due balance, significantly lowered her credit score. His methodology for this credit impact analysis was described in his report ("The nature and purpose of credit scores") and his book (Chapter: "Damage and Damages.")  Thus, it is simply inaccurate and highly disingenuous for Ocwen to tell the court Mr. Hendricks conducted an analysis "on the fly" regarding the credit harms Ocwen caused Ms. Sandigo and just invented a methodology while sitting at his deposition.

## II.   MR. HENDRICKS IS QUALIFIED AND HIS OPINIONS ARE RELIABLE BECAUSE OF HIS SPECIALIZED KNOWLEDGE AND EXPERIENCE.

Mr. Hendricks is a specialized knowledge expert. He accumulated specialized knowledge on credit reporting through 41 years of professional experience, including as author of a 400-page book on credit scores and credit reports (1st Edition, 2004, 3rd Edition 2007), as an expert testifying before Congress by invitation on credit reporting and financial privacy more than 10 times, as the Editor/Publisher of *Privacy Times*, a Washington, D.C.-based professional newsletter subscribed to by specialists, for 33 years. Privacy Times regularly published articles about credit reporting. He served under federal contract as an expert privacy consultant to the U.S. Social Security Administration for eight years. He also was a founding consultant to ID Watchdog, an identity theft services company that Equifax purchased in 2017 for $62 million.

Mr. Hendricks' expert qualifications have been further developed due to his experience as an expert witness over the past 14 years. As an expert witness, he has been granted unprecedented access to the inner workings of the participants in the credit reporting system. This includes access to internal manuals and deposition testimony which describe practices, policies, and procedures. This information, little of which is available to the public, has endowed Mr. Hendricks with a vast reservoir of specialized knowledge about credit reporting standards, logistics, successes and failures.

*Each* of Mr. Hendricks **seventeen jury trials** have been in the capacity of a specialized

knowledge expert.  **Most, if not all of these trials** included Mr. Hendricks testifying about same topics that Ocwen seeks to exclude Mr. Hendricks on in this motion – the harm to Plaintiff's credit worthiness.

Ocwen's motion incorrectly applies the wrong legal standard, the *Daubert* test for scientific testimony.  However, when an expert testifies based on specialized knowledge, not scientific knowledge, the *Daubert* test is inapplicable. *United States v. Cordoba*, 104 F.3d 225, 230 (9th Cir. 1997), as amended (Feb. 11, 1997).

### III.    MR. HENDRICKS TESTIMONY IS RELIABLE

Ocwen complains that Mr. Hendricks' methodology in evaluating the harm Ocwen caused to Ms. Sandigo's credit worthiness is not reliable.  However, Mr. Hendricks states on page 1, of his expert report, "As a specialized knowledge expert, a fundamental method that I employ and follow is to apply my experience with and specialized knowledge of such relevant matters as (1) the credit reporting and credit scoring systems and industries and standards associated with them." Dupre Decl. Exh. 1 (hereinafter "Hendricks Report"). On page 14, Mr. Hendricks covers in great detail how Ocwen's conduct harmed Ms. Sandigo's credit worthiness and the extent of that harm.  Mr. Hendricks goes into further detail regarding the context in which he evaluated the credit harm to Ms. Sandigo on pages 31-35 (nature and purpose of credit scores and credit reports).

Since Ocwen will be presenting its own expert witness testimony - that Ocwen's credit reporting did not cause Ms. Sandigo *any* harm, Mr. Hendrick's testimony will be even more important for the jury to consider.   Significantly, Ocwen has attacked Mr. Hendricks' testimony with respect to only one aspect (the impact on one's credit score) of the types of harms that result from chronic inaccuracies and incomplete credit reporting.  Hendricks Report pp. 15-16. Mr. Hendricks' also opines and will testify to eight other common negative impacts associated with chronic inaccuracies in credit reporting, as identified in his report (*Id*. pp. 15-16).  This will assist the jury two fold; first, in its task of evaluating the willfulness of Ocwen's conduct by

providing context for the foreseeability of harms to Ms. Sandigo; and second, if the jury finds that Ms. Sandigo suffered emotional distress damages, Mr. Hendrick's provides five key factors in assessing these damages. (*Id.* pages 16).

Ocwen claims: "Evan Hendricks testified he has never done an impact analysis, nor in this case" (MIL 6:21). This is an issue of semantics. Label it "impact analysis" or "credit worthiness harm" as Mr. Hendricks refers to it, Mr. Hendricks clearly deals with the impact Ocwen's reporting had on Ms. Sandigo's creditworthiness. Hendricks Report pp. 14-16, 31-35.

Furthermore, as Mr. Hendricks testified at his deposition, he evaluated five factors and applied his specialized knowledge. Dupre Decl. Exh. 4, 31: 16-35:11. This is hardly "on the fly" as Ocwen tries to distort. (MIL 4:2). Ocwen also omits discussion of the methodology used by Mr. Hendricks' in reaching his conclusion. At his deposition, Mr. Hendricks cites to his 2004 book Credit Scores & Credit Reports. *Id.* at 10:5-11:12. This methodology was most important for the public to have, particularly given the secrecy and lack of understanding that existed on this subject. The very first two chapters are all about how credit scores work. The credit scoring model Mr. Hendricks relies upon is based upon the five FICO factors that it makes available to the public. Ocwen ignores this entirely. Mr. Hendricks notes that the rest of FICO's methods are basically treated like the Coca-Cola formula --only a select few know. *Id.* at 23:3-15. However, as Mr. Hendricks will testify, the jury does not need to know exactly how much a credit score goes up or down as a result of one particular tradeline**, but whether it was a substantial factor in a credit decision**. *Id.* at 183:6-20. And this is the test in our jurisdiction. *Abdelfattah v. Carrington Mortg. Servs. LLC*, 2013 WL 495358, at *4 (N.D. Cal. Feb. 7, 2013).

As discussed in his book, and referenced in his expert report, the model Mr. Hendricks used to evaluate the credit harm to Ms. Sandigo incorporates FICO parameters derived from communications with FICO and materials FICO publishes. Mr. Hendricks methodology is based on extensive research and interviews he has conducted. Yet, Ocwen misleadingly states

that Mr. Hendricks invented his methodology by just going to the FICO website (MIL 5:17), and falsely asserts his methodology has not been tested.  To the contrary, Mr. Hendricks has presented these materials at industry conferences; his methodology has been included in his congressional testimony, and has been the subject of cross examination depositions over 100 times, as well as at least twelve jury trials.

At the time Mr. Hendricks published his book, he was not even a regular expert witness. Thus, it is patently untrue that Mr. Hendricks developed his opinions solely for the use at trial. (MIL 7:12).  Ocwen's final "throw to the wall" tactic, is that Mr. Hendrick's work is "junk science" (Motion 5:17). Simply put, as past distinguished justices and jurists have held, Mr. Hendricks is a specialized knowledge expert, and not a scientific expert. **Exhibits 2, 3 & 11-12**. Finally, as other courts have ruled regarding objections to Mr. Hendricks' testimony, such objections go towards the weight of the testimony, not to its admissibility.  And "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" … for challenging the admissible evidence. *Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360 (N.D. Ga. 2017).  This is particularly appropriate given Ocwen's contentions that its expert is the only one qualified to discuss the credit harm to Ms. Sandigo, and that only its kind of creditworthiness analysis exists.

## IV.  CONCLUSION

Plaintiff respectfully requests Ocwen's motion be summarily denied.  However, if the Court is inclined to grant the motion, Plaintiff asks that the Court proceed with a Daubert hearing (and notify the parties so that Plaintiff will have Mr. Hendricks present) where the Court can hear directly from Mr. Hendricks.

Dated:  June 14, 2019                            /s/ Ben E. Dupre

Attorneys for Plaintiff Phyllis Sandigo

5