# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| PHYLLIS SANDIGO,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>Defendant. | Case No. 17-cv-02727-BLF<br><br>**ORDER RE MOTIONS IN LIMINE**<br><br>[Re: ECF 162, 163, 164, 165, 166, 167, 169, 170, 171] |

In preparation for trial which is set to begin on August 19, 2019, the parties submitted nine motions in limine. The Court held a final pretrial conference on June 21, 2019. With respect to each side's motions in limine ("MILs"), the Court rules as follows, for the reasons set forth below and as stated on the record at the pretrial conference:

## PLAINTIFF'S MOTIONS IN LIMINE

**1. Plaintiff's Motion in Limine No. 1 Regarding Undisclosed Witnesses Stephanie Spurlock, Adam Hamburg, and Sonya Miller (ECF 163)**

Plaintiff Phyllis Sandigo moves to preclude under Federal Rule of Civil Procedure ("FRCP") 37(c)(1) three of Defendant Ocwen Loan Servicing, LLC's ("Ocwen") witnesses from testifying at trial because Ocwen did not disclose these witnesses to Plaintiff until May 31, 2019, in violation of FRCP 26(a)(1)(A). *See* ECF 162. The three witnesses are (1) Stephanie Spurlock, a representative of Western Progressive who will testify about the notices of default sent to Plaintiff and the recording and rescission of the notice; (2) Sonya Miller, a representative of Assurant Partners who will testify about insurance policy loss and the processing of Plaintiff's insurance claim; and (3) Adam Hamburg, Ocwen's original defense counsel who will testify about Plaintiff's written discovery and responses to Plaintiff's qualified written requests ("QWR") under

1 the Real Estate Settlement Procedures Act. *See* ECF 162 at 2; ECF 179 at 2–5.

2 Ocwen counters that these witnesses should be allowed to testify because either Plaintiff knew of them before filing the action, or the witnesses were made known to Plaintiff during the discovery process, or the failure to disclose is harmless. ECF 179 at 2. As to Ms. Spurlock, Ocwen argues that Plaintiff has known about Western Progressive's role since she received its demand letters in January 2017, and she was aware of the notice of default and its rescission because she mentions them in her FAC. *Id.* at 3. Ocwen's 30(b)(6) witness in his deposition in October 2018 also made clear to Plaintiff's counsel that Western Progressive and Ocwen are separate entities. As to Ms. Miller, Ocwen argues that Plaintiff has known about third-party Assurant since October 2018, when Ocwen's counsel informed Plaintiff's counsel about Assurant's independent role in handling insurance issues for Ocwen. *Id.* at 4. Finally, as to Mr. Hamburg, Ocwen argues that Plaintiff has known about Mr. Hamburg's role since at least December 2017 when he responded to Plaintiff's QWRs and since he prepared Ocwen's initial responses to Plaintiff's discovery requests. *Id.* at 5.

As discussed on the record at the pretrial conference, Plaintiff's MIL No. 1 is **GRANTED IN PART AND DENIED IN PART**.

The MIL with respect to Stephanie Spurlock is DENIED on the condition that Ms. Spurlock be made available for deposition (which can be by video) with the costs of the deposition to be covered by Ocwen. Though Ms. Spurlock signed the notice of rescission, she was not otherwise specifically disclosed to Plaintiff, and Plaintiff was never put on notice that Ms. Spurlock might testify as to the notices of default, which were sent well before the rescission was recorded. Because Ocwen neither added Ms. Spurlock to its initial disclosures nor otherwise made her existence or role known to Plaintiff, Ocwen violated FRCP 26(e). This failure to disclose was not substantially justified because, though Plaintiff knew of Western Progressive's role, Ocwen should have determined who would be testifying on Western Progressive's behalf and disclosed that person's identity to Plaintiff. Moreover, it was prejudicial because Ms. Spurlock's testimony about the notices of default will directly pertain to one of Plaintiff's theories of liability under the Rosenthal Act. However, the harsh sanction of exclusion under FRCP 37 is not

necessary here because the prejudice to Plaintiff can otherwise be cured. *See Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, No. CV 07-8108-FMO, 2014 WL 12586105, at *18 (C.D. Cal. Jan. 3, 2014). Because Ms. Spurlock's testimony will be limited and there are almost two months until trial, there is sufficient time for Plaintiff to take Ms. Spurlock's deposition, with Ocwen covering the costs but not the attorneys' fees.

For the same reasons, the MIL with respect to Sonya Miller is DENIED on the condition that Ms. Miller be made available for deposition (which can be by video) with the costs of the deposition to be covered by Ocwen. As with Ms. Spurlock, Ocwen never disclosed Ms. Miller to Plaintiff, and thus violated FRCP 26(e). And Ocwen's failure to do so was neither substantially justified nor harmless. However, given the limited nature of Ms. Miller's testimony and the amount of time before trial, an appropriate sanction under FRCP 37 is to allow Plaintiff's attorney to depose Ms. Miller, with costs covered by Ocwen.

Finally, the motion with respect to Mr. Hamburg is GRANTED IN PART AND DENIED IN PART. The Court finds that with respect to the QWRs, Mr. Hamburg's involvement was sufficiently disclosed to Plaintiff to satisfy FRCP 26(e) because Mr. Hamburg signed Ocwen's responses to certain QWRs and was the named recipient of at least one, as discussed at the conference. As such, Mr. Hamburg can testify about the QWRs and related events. However, Mr. Hamburg is not permitted to testify with respect to Ocwen's responses to Plaintiff's discovery requests because Plaintiff would have no reason to believe that an attorney would testify about his client's discovery responses at trial, such that Mr. Hamburg was not sufficiently disclosed under FRCP 26. Moreover, this failure to disclose him is neither substantially justified nor harmless because the nature of his testimony on these issues is still unknown to Plaintiff and Ocwen should have made it known to Plaintiff that it intended to have Mr. Hamburg testify about litigation issues much sooner so Plaintiff could prepare to and take Mr. Hamburg's deposition.

**2. Plaintiff's Motion in Limine No. 2 Regarding Undisclosed Witness James T. Broome, Esq. (ECF 164)**

Plaintiff moves to preclude under FRCP 37(c)(1) Ocwen's witness James T. Broome from testifying at trial because Ocwen did not disclose Mr. Broome to Plaintiff before May 31, 2019, in

3

violation of FRCP 26(a)&(e). *See* ECF 164. Plaintiff describes Mr. Broome as Ocwen's lead attorney in Plaintiff's bankruptcy action, but Ocwen describes him as a former member of Ocwen's bankruptcy department and current paralegal at Ocwen. ECF 189 at 3–4. Plaintiff notes that throughout the litigation, Ocwen has relied on its 30(b)(6) witness Kevin Flannigan to testify about the bankruptcy proceedings, such that Plaintiff was led to believe that only Mr. Flannigan would testify about these issues. She also argues that Mr. Broome should be excluded because he was not disclosed as an expert witness but plans to offer expert opinions and impermissible legal opinions, and his testimony will conflict with this Court's summary judgment ruling on res judicata. *See* ECF 164 at 3–5.

Ocwen argues that Mr. Broome should not be excluded because Ocwen disclosed its bankruptcy preclusion theory to Plaintiff in October 2018, and Plaintiff did not attempt to conduct discovery related to this theory by, for example, deposing anyone from Ocwen's bankruptcy department. ECF 189 at 3. Moreover, Ocwen argues that Mr. Broome is not an attorney and will not be offering expert or legal opinions, but instead will provide testimony related to Ocwen's bankruptcy practices. *Id.* at 3–4, 6. Ocwen admits that it never disclosed Mr. Broome by name to Plaintiff but argues that Plaintiff is not prejudiced because Ocwen disclosed that members of its bankruptcy department (specifically, Mr. Muldoon and Ms. Brophy) would be percipient witnesses. *Id.* at 4–5. Ocwen then notes that even if it did prejudice Plaintiff, Plaintiff can still depose Mr. Broome, Mr. Broome's testimony will not disrupt trial, and Ocwen did not act in bad faith. *Id.* at 5–6.

As discussed on the record at the pretrial conference, Plaintiff's MIL No. 2 is **GRANTED**, but Ocwen is allowed to amend its witness list to include Mr. Muldoon or Ms. Brophy. Mr. Broome was never disclosed to Plaintiff in violation of FRCP 26, and the Court cannot say that this failure was justified or harmless FRCP Rule 37. The testimony of an individual from Ocwen's bankruptcy department is critical to Ocwen's defense and allowing an undisclosed party to testify on such issues would prejudice Plaintiff. Moreover, Ocwen acknowledges that Mr. Muldoon and Ms. Brophy are "one and the same" with Mr. Broome, which implies that there was no justifiable reason not to similarly disclose Mr. Broome.

4

1    That said, the Court finds that Mr. Muldoon and Ms. Brophy were sufficiently disclosed to Plaintiff during Mr. Flannigan's 30(b)(6) deposition. Mr. Flannigan told Plaintiff's attorney that he had spoken to Mr. Muldoon and Ms. Brophy about the bankruptcy's effect on the servicing of Plaintiff's loan. *See* ECF 189-4 at 16:22–25. Plaintiff's attorney followed up with questions about what Mr. Flannigan discussed with each of these individuals, and Mr. Flannigan described the information that each of these witnesses provided to him about Ocwen's processes. *Id.* at 18:17–20:12. Thus, these individuals and their areas of knowledge were sufficiently disclosed to Plaintiff during discovery. As such, Ocwen may amend its witness list to include either of these individuals. Plaintiff will not have an opportunity to depose whomever Ocwen selects.

### 3. Plaintiff's Motion in Limine No. 3 regarding Medical Records About Jury Service (ECF 165)

Plaintiff moves to exclude certain medical records from September 2012 and 2015 in which Plaintiff asked her doctor to write a letter excusing her from jury service because she cannot hear or see well. *See* ECF 165. Plaintiff argues that these records are not relevant under Federal Rules of Evidence ("FRE") 401 and 402 and that the probative value is substantially outweighed by the potential prejudice under FRE 403 because they are outside the relevant timeframe and the jury may find it unfair that Plaintiff sought to get out of jury duty. The emails are from September 2012 and June 2015; Plaintiff alleges her emotional distress began in December 2015. ECF 165 at 2 and Attachment. Plaintiff also mentions that she will raise relevance objections to most of the 1,095 pages of medical records that Ocwen seeks to introduce.

Ocwen argues that these records are relevant to Plaintiff's alleged emotional distress damages because they indicate other potential sources for her alleged stress and anxiety than Ocwen's actions here. ECF 190 at 2–4. Ocwen also argues that the records are not unduly prejudicial under Rule 403.

As discussed on the record at the pretrial conference, Plaintiff's MIL No. 3 is **DENIED**. The email evidence is admissible under FRE 401 and 402 because it is relevant to whether Plaintiff's emotional distress may have been caused by other factors than Ocwen's alleged actions. *See, e.g.*, *Luna v. Cty. of Los Angeles*, No. 07-CV-04715-SJO, 2008 WL 11410093, at \*5 (C.D.

5

Cal. Sept. 25, 2008). Moreover, it is admissible under FRE 403 because its probative value is not substantially outweighed by its potential to prejudice Plaintiff. This evidence is directly probative of other causes of Plaintiff's emotional distress besides Ocwen. Moreover, Plaintiff does not argue that the statements are untrue. Introduction of this evidence will not prejudice Plaintiff, as jurors understand that certain individuals need to be excused from jury service due to legitimate limitations.

To the extent Plaintiff is requesting that the Court exclude some larger portion of the 1,095 records, the request is **DENIED** without prejudice to Plaintiff's combing through the records and identifying those that are truly irrelevant or unduly personally invasive. Introduction of such a large number of medical records would not only waste time but would also likely include cumulative evidence. Moreover, to the extent that these documents are not from the relevant time period, they are likely to be less relevant. The parties are directed to meet and confer to narrow the number of documents. Plaintiff also is not precluded from objecting to certain documents as they are introduced at trial. The Court notes that Ocwen represented at the hearing that it only intends to introduce documents from 2015 and after.

### 4. Plaintiff's Motion in Limine No. 4 Regarding Legal Opinion Testimony (ECF 166)

Plaintiff moves to exclude impermissible legal opinion testimony by Ocwen's witnesses to the extent they seek to testify that "Ocwen was either obligated or authorized by some bankruptcy court action or order, to charge Ms. Sandigo a monthly payment of $1,597.56." *See* ECF 166. She argues that any such testimony would be inconsistent with this Court's summary judgment ruling, which held as a matter of law that res judicata does not bar Plaintiff from arguing that she owed the de-escrowed monthly payment amount.

Ocwen counters that none of its witnesses intend to provide legal conclusions or opine about res judicata at trial. ECF 191 at 2–5. But Ocwen argues that certain fact-based testimony about Ocwen's actions with respect to the Bankruptcy Action and loan modification should be allowed. *Id.*

As discussed on the record at the pretrial conference, Plaintiff's MIL No. 4 is **GRANTED IN PART AND DENIED IN PART**. The Court accepts Ocwen's representation that its

witnesses will not testify about res judicata issues or otherwise offer legal opinions about the impact of the Bankruptcy Court's decision on Ocwen's actions. Thus, Plaintiff's motion is GRANTED with respect to legal opinions or res judicata issues. However, Defendant's witnesses will be allowed to testify with respect to the facts related to the Bankruptcy Action and how the events in the Bankruptcy Court impacted Ocwen's actions under its own policies and procedures. Such testimony would not be impermissible legal opinion and does not speak to any legally binding res judicata effect of the Bankruptcy Action. Thus, to the extent Plaintiff seeks to exclude testimony concerning the facts surrounding the Bankruptcy Action's impact on Ocwen's actions, the motion is DENIED.

## **DEFENDANT'S MOTIONS IN LIMINE**

**1. Defendant's Motion in Limine No. 1 for an Order Excluding Plaintiff's Expert Witness, Evan Hendricks', Testimony and Opinions Concerning Credit Scoring and Credit Score Impact Analyses, Both Generally and Specifically, as They Relate to Plaintiff's Credit Score (ECF 162)**

Ocwen moves to exclude testimony from Plaintiff's expert witness Evan Hendricks regarding "credit score impact analyses, Plaintiff's credit score, the cause of the alleged drop in Plaintiff's credit score, and any alleged damages based on that drop." ECF 162 at 3. Ocwen argues that this evidence is inadmissible because Hendricks does not know how to perform an impact analysis, his "general" impact analysis, as raised in his deposition, does not satisfy the *Daubert* standard, and he invented the "general" impact analysis for trial, such that his opinions are unreliable and inadmissible under FRE 702 and 703. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993). Specifically, Ocwen argues that Hendricks's method cannot be tested, his methodology was not subject to peer review or publication, the potential error rate is high, and the methodology is not generally accepted in the community. ECF 162 at 5–6.

Plaintiff counters that Hendricks is a specialized knowledge expert with 41 years of professional experience, including authoring a book on credit scores and reports, who has been allowed to testify on these same issues in the past. ECF 181 at 1, 2–3. Plaintiff notes that Mr. Hendricks intends to testify that Ocwen damaged Plaintiff's creditworthiness in two ways: "(1) the past-due balance rendered her ineligible for most major forms of credit—because creditors won't

7

extend credit to consumers with past-due balances on their credit reports, and (2) the derogatory 180-days late 'status,' coupled with the past-due balance, significantly lowered her credit score." *Id.* at 2. Plaintiff also argues that *Daubert* is inapplicable because Hendricks is not a scientific expert, as opposed to a specialized knowledge expert. Ultimately, Plaintiff emphasizes that "as Mr. Hendricks will testify, the jury does not need to know exactly how much a credit score goes up or down as a result of one particular tradeline, *but whether it was a substantial factor in a credit decision*." *Id.* at 4. Contrary to Ocwen's assertions, Plaintiff argues that Hendricks's analysis of the impact of Ocwen's alleged actions on Plaintiff's credit score is based on his vast experience in the field and a well-founded methodology. *Id.* at 5.

As discussed on the record at the pretrial conference, Defendant's MIL No. 1 is **GRANTED IN PART AND DENIED IN PART**.

FRE 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." In *Daubert*, 509 U.S. at 589, the Supreme Court held that FRE 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." In K*umho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999), the Supreme Court clarified that the "basic gatekeeping obligation" articulated in *Daubert* applies not only to scientific testimony but to all expert testimony. The Supreme Court also made clear that the reliability inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153; *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003). "Daubert and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010), *aff'd* 131 S. Ct. 2238 (2011). So long as an expert's methodology is sound and his opinions satisfy the requirements of FRE 702, underlying factual disputes and how much weight to accord the expert's

1 opinion are questions for the jury. *Micro Chem.*, 317 F.3d at 1392; *Primiano v. Cook*, 598 F.3d
2 558, 565 (9th Cir. 2010).

3       Ocwen is correct that Mr. Hendricks does not satisfy the requirements of FRE 702 or
4 *Daubert* with respect to the scientific impact analysis required to quantify the impact of an item on
5 Plaintiff's credit report or FICO credit score. *See generally* ECF 162-4 (Ocwen's expert's
6 declaration describing impact analysis requirements). The Court has reviewed Mr. Hendricks's
7 report in detail and nowhere in his report does he discuss or conduct an "impact analysis" of this
8 kind. *See* ECF 162-3. Thus, Ocwen's motion is GRANTED with respect to Mr. Hendricks's
9 testimony on any "impact analysis"; Mr. Hendricks will not be permitted to testify as to the
10 quantitative impact of Ocwen's alleged credit reporting on Plaintiff's credit score.

11       However, as Plaintiff makes clear, Mr. Hendricks does not actually intend to testify as to
12 this information. Instead, Mr. Hendricks will testify based on his extensive experience about
13 whether Ocwen's actions were a "substantial factor" in any decision based on Plaintiff's credit.
14 *See Abdelfattah v. Carrington Mortg. Servs. LLC*, 2013 WL 495358, at *4 (N.D. Cal. Feb. 7,
15 2013). Based on his extensive experience in the industry, Mr. Hendricks has specialized
16 knowledge necessary to testify about such issues as an expert. *See* ECF 162-3 at 36–55
17 (Hendricks's curriculum vitae). His report also demonstrates that he is opining on the impact of
18 Ocwen's actions on Plaintiff's creditworthiness based on this knowledge, the facts of the case, and
19 reliable principles and methods. *See, e.g.*, *id.* at 14–16, 31–35. Thus, Ocwen's motion is
20 DENIED to the extent Hendricks testifies about the non-quantitative impact of Ocwen's actions on
21 Plaintiff's credit score and creditworthiness. To the extent Ocwen believes deficiencies remain in
22 Mr. Hendricks's opinions, cross examination is the best method of exposing those problems to the
23 jury.

24 **2. Defendant's Motion in Limine No. 2 for an Order Precluding the Introduction of All Evidence and Arguments Regarding Prior Judicial Findings and Jury Verdicts in Other Cases, Regulatory Actions and Settlements Involving Ocwen (ECF 167)**
25

26       Ocwen moves to exclude "all evidence and arguments regarding prior judicial findings and
27 jury verdicts in other cases, regulatory actions and settlements involving Ocwen" because they are
28 irrelevant, unduly prejudicial, and improper character evidence under FRE 401, 402, 403, and 404;

and because Mr. Hendricks's testimony about these actions is improper expert testimony under FRE 701 and 702. Specifically, Ocwen notes that the previous cases and settlements involved different facts, that Ocwen did not admit liability in the consent decrees, and that evidence of the consent decrees might imply that Plaintiff is covered by them.

Plaintiff counters that "evidence of similar complaints goes to willfulness, intent, and reprehensibility" for purposes of punitive damages under the Fair Credit Reporting Act ("FCRA"). ECF 182 at 1 (citing *McCollough v. Johnson*, 637 F.3d 939 (9th Cir. 2010)). Plaintiff argues that this evidence is not barred under FRE 404 because that rule expressly allows a party to introduce such evidence to show intent, knowledge, or absence of mistake or accident. *Id.* at 2. Moreover, Plaintiff argues that such evidence is admissible under FRE 402 and 403 because it involved the "same exact types of harms that Ms. Sandigo is complaining of—that Ocwen's credit reporting and its credit reporting dispute investigations are defective and causing harm." *Id.* at 3; *see also id.* at 3–4 (comparing the facts here with previous cases). Thus they speak directly to whether Ocwen had a pattern and practice of failing to comply with the credit reporting requirements.

As discussed on the record at the pretrial conference, Defendant's MIL No. 2 is **GRANTED IN PART AND DENIED IN PART**, but Ocwen may offer a limiting instruction that describes the limited relevance of the results in the allowed cases, regulatory actions, and settlements.

As a general matter, the Court agrees with Plaintiff that she can introduce the outcomes of past lawsuits and consent decrees that are sufficiently similar to this case in order to prove that Ocwen acted willfully, such that punitive damages are appropriate under the Fair Credit Reporting Act. The Ninth Circuit in *McCollough* held that the district court did not err in "concluding that the testimony of [the defendant's] conduct in similar cases was relevant to show intent, absence of mistake, malice, willfulness, and reprehensibility," including to determine if punitive damages were appropriate. 637 F.3d at 953–54. Thus, the evidence is relevant under FRE 401 and 402. Similarly, because it can be offered to show intent, it is specifically exempted from Rule 404. Also, to the extent the outcomes are sufficiently similar to the alleged actions in this case, the evidence is extremely probative of Ocwen's willfulness (based on repeated actions despite past

10

1 rulings against it). That these actions may reflect poorly on Ocwen does not make them unduly

2 prejudicial under FRE 403, especially if the jury is given a limiting instruction.

3 The Court has reviewed the four relevant actions/consent decrees and finds that three of the four are admissible against Ocwen. The motion is GRANTED as to *Jeffers*. The *Jeffers* decision is not admissible because Plaintiff's First Amended Complaint was filed on January 19, 2018 (ECF 38) before the judgment in the *Jeffers* action was entered on February 22, 2018 (ECF 184-10). Thus, Ocwen could not have been on notice that its actions were wrongful at the time Plaintiff's operative pleading was filed. The mere filing of the complaint in another case (here, *Jeffers*) cannot put a party on notice that its actions are wrongful, without a finding of liability against it or its agreement to a consent decree.

However, the Court finds that the *Daugherty* case (judgment in May 2016, affirmance in July 2017), the December 2013 Consent Order, and the February 2017 Consent Order are sufficiently similar to provide evidence of notice here. *See* ECF 184-3, 184-7. In *Daugherty v. Ocwen Loan Servicing, LLC*, the plaintiff argued that Ocwen willfully violated the Fair Credit Reporting Act when it did "not investigate and correct the erroneous information" included in its credit reports about the plaintiff and it "responded to all the dispute verification requests by confirming only [plaintiff's] ownership of the account" regardless of the dispute code included, among other problems with Ocwen's policies related to processing and investigating dispute verifications. 701 F. App'x 246, 254–57. (4th Cir. 2017). As in *Daugherty*, Plaintiff alleges that Ocwen failed to conduct a proper investigation in response to disputed and inaccurate information Ocwen furnished to the credit bureaus. *See, e.g.*, ECF 38 ¶¶ 109, 133–34, 143, 166.

Similarly, the Compliance Review conducted prior to the 2017 Consent Decree found that Ocwen had violated the FCRA when it "did not report, or did not timely report, corrected California borrower information to all credit reporting agencies to which [Ocwen] had previously provided incorrect information"; "did not report to credit reporting agencies [its] receipt of notice that California borrowers' disputed information [Ocwen] had previously reported"; and "did not review all relevant California borrower information from a credit reporting agency or borrower upon receipt of borrower disputes." ECF 184-9 at 8. And the 2013 Consent Judgment required

11

Ocwen to "take appropriate action to promptly remediate any inaccuracies in borrowers' account information, including [c]orrecting inaccurate reports to consumer credit reporting agencies." ECF 184-5 at A-7. Thus, these too mirror some of the Plaintiff's allegations here.

However, this evidence cannot be introduced without limits. First, the Court finds that most of the content in these consent decrees/judgments is irrelevant to the present case and would unduly prejudice Ocwen if introduced. Thus, Plaintiff may only seek testimony on those portions relevant to Ocwen's alleged actions in this case. The parties are to meet and confer to propose redactions to these documents. Second, Ocwen is correct the Mr. Hendricks is not qualified to read from and interpret judicial opinions. Likewise, allowing him to do so would confuse the jury, who would not understand the context of the discussion, such as *Daugherty*'s holding being in the context of a motion for judgment as a matter of law. Thus, Mr. Hendricks cannot quote from the opinions or the consent decrees. However, Mr. Hendricks can read from the verdict and introduce what the allegations in the case or context of the decrees were in order to provide evidence of what Ocwen may have been on notice of. Ocwen of course is permitted to thoroughly cross-examine Mr. Hendricks on his conclusions about notice and the relevance of these cases and settlements. And Ocwen is not prohibited from introducing cases of its own in which it may have been found not liable on similar issues.

**3. Defendant's Motion in Limine No. 3 for an Order Excluding Plaintiff's Expert, Evan Hendricks', Expert Report and Any Written or Oral Testimony Related to It (ECF 169)**

Ocwen moves to exclude Mr. Hendricks's entire report, or portions thereof, and testimony related to it for four reasons: (1) it recites opinions on facts on which Hendricks has no expertise, including Plaintiff's emotional distress; (2) it is based on insufficient data about Ocwen's policies, practices, and procedures; (3) it recites unhelpful information, such as quotes from 2003 congressional hearings; and (4) it contains myriad irrelevant and prejudicial information and impermissible character evidence, such as repeatedly referring to Plaintiff as a "victim." ECF 169 at 3.

Plaintiff argues that Hendricks's testimony is important to provide context to the jury about credit reporting, the damages that result from misreporting, whether Ocwen was on notice of the

alleged deficiencies in its reporting, and whether Ocwen's investigations of Plaintiff's credit disputes were reasonable. ECF 183 at 1. Other courts have allowed Mr. Hendricks to testify on damages typically suffered by victims of credit reporting inaccuracies. *Id.* at 1, 4; Dupre Decl., Exs. 3 & 11. Plaintiff also notes that Hendricks can properly discuss changes Ocwen may have made to its policies and procedures in opining on the reasonableness of Ocwen's investigations of Plaintiff's dispute. ECF 183 at 2. As discussed above, Hendricks has substantial experience opining on such issues. Plaintiff states that Hendricks does not plan to testify as to Plaintiff's emotional distress damages or to offer legal conclusions about Ocwen's practices. *Id.* at 2–3. Finally, Plaintiff argues that Hendricks should be able to refer to her as a victim. *Id.* at 5.

As discussed on the record at the pretrial conference, Defendant's MIL No. 3 is **GRANTED IN PART AND DENIED IN PART**.

The Court has thoroughly reviewed Mr. Hendricks' expert report. As an initial matter, the Court notes that Mr. Hendricks will not be able to introduce his report into evidence, such that the Court need not exclude his report wholesale. However, Ocwen raises many meritorious objections that the Court addresses here. This ruling does not preclude Ocwen from raising additional objections during Mr. Hendricks's testimony at trial.

First, the Court agrees that Mr. Hendricks was not disclosed as an expert under FRE 702 on the subject of Plaintiff's emotional distress damages or the credibility of others who have testified about the emotional distress damages caused by misreports of their credit. Thus, Ocwen's motion is GRANTED to the extent Mr. Hendricks seeks to testify specifically about Plaintiff's or other specific individuals' emotional distress. Plaintiff represents that Mr. Hendricks will not testify about these specifics. However, Ocwen's motion is DENIED to the extent Mr. Hendricks seeks to testify generally about the types of harm consumers suffer as a result of damages to their creditworthiness. Given his extensive experience in the field, Mr. Hendricks can reliably testify as a witness on the impacts of harm to creditworthiness on consumers. He has been allowed to testify about such issues in the past. For example, Mr. Hendricks can testify that harm to creditworthiness can make it more difficult to get a loan and that consumers have reported feeling sadness as a result of this harm.

13

Second, as to Ocwen's policies, practices, and procedures, the Court agrees with Ocwen that Mr. Hendricks is not an expert on loan servicing, and thus cannot opine on whether Ocwen's policies and practices were proper. And he, of course, cannot offer any legal conclusions. Similarly, Mr. Hendricks cannot interpret the legal outcome of other cases or speak to what a judge or jury in a given case concluded, though he can introduce the facts of the outcomes. To the extent Mr. Hendricks seeks to testify about such issues, Ocwen's motion is GRANTED. However, as discussed, Mr. Hendricks is a proper expert witness on credit reporting practices and procedures. He can testify as an expert under FRE 702 about whether Ocwen's policies or procedures comport with best practices or other requirements in credit reporting. The Court is satisfied that Mr. Hendricks, given his past experience with Ocwen and the other information in his report, has a sufficient understanding of Ocwen's credit reporting policies and procedures to opine on them. *See* ECF 169-2 at 1–3, 9–12. Thus, Ocwen's motion is DENIED to the extent Mr. Hendricks seeks to testify about Ocwen's policies and practices with respect to credit reporting.

Third, as to his descriptions of the history of FCRA, given his extensive experience in the area (including authoring a book on a related subject), Mr. Hendricks is sufficiently qualified to testify as an expert on the history of FCRA, as well as provide context for the Act at a high level. To the extent Ocwen seeks to exclude this more general testimony, Ocwen's motion is DENIED. However, the Court agrees with Ocwen that Mr. Hendricks cannot quote from the Congressional record, previous court findings, jury verdicts, or other similar sources. Not only would testimony on these issues border on improper legal opinions, but also it is likely to be irrelevant or distracting in the context of Mr. Hendricks simply providing context on the Act. Thus, to the extent Mr. Hendricks plans to testify about the specific history or application of the Act, beyond the general history necessary for context, Ocwen's motion is GRANTED. Ocwen may raise specific objections at trial to the extent that Mr. Hendricks begins drawing legal conclusions about the reasonableness of Ocwen's actions within the credit reporting framework. Hendricks cannot recast the law.

Finally, Ocwen's motion is GRANTED to the extent Mr. Hendricks plans to refer to Plaintiff as a victim. Such a conclusion would not only be untrue (unless and until a verdict is

rendered against Ocwen) and a legal conclusion, but also it does not fall within the purview of his expertise under FRE 702. Likewise, Mr. Hendricks must tread lightly with respect to drawing explicit comparisons between Plaintiff and other individuals whom he may refer to as victims, at least to the extent such comparisons may imply that Plaintiff was a victim because she suffered similar harms to others who were victims. Ocwen may raise specific objections on these issues as Mr. Hendricks testifies.

**4. Defendant's Motion in Limine No. 4 for an Order Precluding Plaintiff, Her Witnesses and Her Counsel from Opining and Arguing About the Correctness or Legitimacy of Ocwen's Servicing of Plaintiff's Loan (ECF 170)**

Ocwen moves to exclude "Plaintiff, her witnesses and her counsel from opining about the correctness or legitimacy of the servicing acts, decisions, policies and procedures (collectively, 'Servicing') as they were carried-out by Ocwen." ECF 170 at 3. Ocwen argues that exclusion is warranted because Plaintiff does not have a mortgage-loan-servicing expert; none of the witnesses have the requisite knowledge to opine on these issues under FRE 702; and their opinions on the issue are irrelevant and unduly prejudicial under FRE 402 and 403.

Plaintiff argues that Ocwen does not cite a single case to support its position that only an expert can testify as to Ocwen's servicing actions here. ECF 185 at 1. Plaintiff argues that this case is not so complex that lay witnesses should be barred from testifying with respect to Ocwen's servicing of the loan. *Id.* at 2. Plaintiff also notes that Ocwen has not designated an expert on these issues. *Id.* at 3.

As discussed on the record at the pretrial conference, Defendant's MIL No. 4 is **GRANTED IN PART AND DENIED IN PART**.

The Court agrees with Ocwen that Plaintiff has not disclosed any witnesses who can opine as experts on loan servicing. Thus, Ocwen's motion is GRANTED to the extent any of Plaintiff's witnesses, including Mr. Hendricks, intend to provide expert testimony regarding loan servicing, whether Ocwen's loan servicing comported with industry standards, whether the application of her payments in a particular manner was proper, or other similar expert topics.

However, Plaintiff can testify about her personal experiences with Ocwen, including what happened to her, what Ocwen said to her, and the results and impacts of these actions—that is, the

facts underlying Ocwen's servicing of her loan, as she knows them. The same is true for other witnesses who may have witnessed Ocwen's actions in this regard. Plaintiff's and her witnesses' reflections on Ocwen's servicing of Plaintiff's loan are extremely relevant to all of her claims in the case. As such, the probative value of the evidence on these issues outweighs the potential prejudice to Ocwen because the jury can understand that these witnesses are simply offering lay opinions. To the extent the motion also extends to Plaintiff's attorneys, her attorneys may argue that the admitted facts satisfy the elements of each of Plaintiff's claims. Thus, Ocwen's motion is DENIED to the extent it seeks to exclude Plaintiff's or her witnesses lay testimony regarding Ocwen's servicing of the loan. Defendant may object to specific questions to the extent they call for expert opinion.

5. **Defendant's Motion in Limine No. 5 for an Order Excluding Plaintiff, Her Witnesses and Her Counsel from Testifying and Arguing About Plaintiff's Property Damage and Resultant Insurance Loss Claim as Irrelevant and Unduly Prejudicial Under Federal Rules of Evidence 402 and 403 (ECF 171)**

Ocwen moves to exclude any testimony with respect to Plaintiff's property damage and resultant insurance loss claim under FRE 402 and 403 because the Court dismissed at summary judgment Plaintiff's conversion claim and insurance-based theory of recovery under her Rosenthal Fair Debt Collection Practices Act claim. ECF 171 at 3.

Plaintiff argues that the insurance evidence is relevant to Plaintiff's Rosenthal Act claim because Ocwen informed her that it was withholding the insurance checks because she was in default and thus arguably used the checks as leverage to get Plaintiff to pay more. ECF 186 at 1. Plaintiff also notes that the Court did not rule out her Rosenthal Act claim based on her insurance theory of liability. Plaintiff emphasizes key differences between conversion and Rosenthal Act claims that indicate that the Court's ruling on conversion is not dispositive. *Id.* at 3–4. Plaintiff also argues that the evidence is admissible because it shows damages for Plaintiff's other Rosenthal Act theories, because Ocwen's withholding of the checks was allegedly a result of its saying that she was in default. Finally, Plaintiff argues that 19 exhibits is not excessive, but that Plaintiff will withdraw five if exhibits if need be. *Id.* at 5.

As discussed on the record at the pretrial conference, Defendant's MIL No. 5 is **DENIED**,

but Ocwen may offer a limiting instruction that describes the limited relevance of the insurance evidence to Plaintiff's Rosenthal Act theory of liability. The Court agrees with Plaintiff that it did not grant summary judgment on Plaintiff's theory that Ocwen's withholding of the insurance check violated the Rosenthal Act. Because Ocwen did not move for partial summary judgment of the Rosenthal Act claim, the Court denied Ocwen's motion on the Rosenthal Act claim after it found that Plaintiff had at least two viable theories of liability. *See* ECF 152 at 30–31. Because it was able to deny Ocwen's motion based on those two theories, it was not necessary for the Court to address the insurance theory of liability. Moreover, the elements of the dismissed conversion claim differ from the Rosenthal Act claim, such that dismissal of the conversion claim does not preclude Plaintiff's theory of liability under the Rosenthal Act. Thus, the evidence related to Plaintiff's insurance claim is relevant to Plaintiff's Rosenthal Act claim.

The Court agrees with Ocwen however that discussions of Plaintiff's property damage and the insurance claim has the potential to confuse the jury. As such, the Court will allow a limiting instruction that explains to the jury the limited relevance of the evidence. Likewise, as discussed at the conference, the Court is not inclined to allow duplicative evidence as to the scope of the damage to Plaintiff's house, as it might unduly sway the jury because Ocwen is indisputably not at fault for the damage. However, the Court will make specific rulings on the admissibility of such evidence at trial.

**ORDER**

For the foregoing reasons and as discussed on the record at the June 21, 2019 pretrial conference, the motions in limine are decided as follows:

| | |
|---|---|
| Plaintiff's Motion in Limine No. 1: | GRANTED IN PART and DENIED IN PART on the condition that Ocwen make Ms. Spurlock and Ms. Miller available for a deposition, with Ocwen covering the costs. |
| Plaintiff's Motion in Limine No. 2: | GRANTED without prejudice to Ocwen amending its witness list to include either Mr. Muldoon or Ms. Brophy. |
| Plaintiff's Motion in Limine No. 3: | DENIED. |
| Plaintiff's Motion in Limine No. 4: | GRANTED IN PART and DENIED IN PART. |

17

Defendant's Motion in Limine No. 1: GRANTED IN PART and DENIED IN PART.

Defendant's Motion in Limine No. 2: GRANTED IN PART and DENIED IN PART without prejudice to Ocwen presenting a limiting instruction to the jury.

Defendant's Motion in Limine No. 3: GRANTED IN PART and DENIED IN PART.

Defendant's Motion in Limine No. 4: GRANTED IN PART and DENIED IN PART.

Defendant's Motion in Limine No. 5: DENIED without prejudice to Ocwen presenting a limiting instruction to the jury.

**IT IS SO ORDERED.**

Dated: June 24, 2019

_____
BETH LABSON FREEMAN
United States District Judge